[L. A. No. 29627. In Bank. Sept. 3, 1969.]

CLIFFORD L. MERRILL et al., Plaintiffs and Respondents, v. DEPARTMENT OF MOTOR VEHICLES et al., Defendants and Appellants.

---

Thomas C. Lynch, Attorney General, Warren H. Deering and David Gould, Deputy Attorneys General, for Defendants and Appellants.

Young & Young and W. Herbert Young for Plaintiffs a
Respondents.

SULLIVAN, J. — The Department of Motor Vehicl
(Department) appeals from a judgment granting a writ
mandate commanding it to set aside a decision denying 
application for a motor vehicle dealer's license.

Clifford L. Merrill and Harold E. Morris, dba The Me
chandiser, a copartnership (Merchandiser), operate what
commonly known as a membership discount house. In additi
to selling furniture, appliances and household goods, Me
chandiser offers new automobiles to its members by means 
an arrangement with several franchised automobile deale
whereby the dealers sell automobiles to customers referred 
Merchandiser for less than the normal retail price.

The record shows that Merchandiser's method of doi
business was substantially as follows. It would obtain from i
member-customer upon a printed form a detailed descripti
of the type of automobile and accessories which the memb
desired to purchase. Its salesman would then fill in the whol
sale price of the car and the accessories, adding a marku
which had been agreed upon between Merchandiser and t
dealer. The salesman would give one copy of the form to t
customer in a sealed envelope, send one copy to the dealer an
keep one copy. The customer would then take the envelope 
the dealer who would quote to the customer the price co
tained therein. If the customer found the price satisfactor
and decided to purchase the car, he would sign all contrac
with, and pay the purchase price to, the dealer directly. Th
latter would pay Merchandiser a commission.

On March 3, 1965, the Department wrote a letter to Me
chandiser which informed it that it had been engaged i
activity which rendered it a motor vehicle dealer within th
provisions of section 285 of the Vehicle Code[1] and advised 
that it must desist from such activity unless it obtained 
license. (§ 11700.) Merchandiser thereupon filed with th
Department an application for a license—which applicatio
was proper in form and included all information required b

---

[1]Section 285 provides: " 'Dealer' is a person not otherwise express
excluded by Section 286 who: (a) For commission, money, or other thin
of value, sells, exchanges, buys, or offers for sale, negotiates or attempt
to negotiate, a sale or exchange of an interest in, a vehicle subject t
registration under this code, or induces or attempts to induce any perso
to buy or exchange an interest in a vehicle and, who receives or expect

aw. (§ 11704.) With the application Merchandiser filed a bond as required by law. (§ 11710.) The Department informed Merchandiser that the application would be denied and, at Merchandiser's request, scheduled a hearing in the matter. (§ 11708.) On February 11, 1966, a hearing was held in conformity with the Administrative Procedure Act (Gov. Code, § 11500 et seq.; see Veh. Code, § 11708, subd. (b)), and the matter was submitted on stipulated facts together with certain testimony.

On April 11, 1966, the hearing officer issued a proposed decision recommending denial of the application, and this decision was subsequently adopted by the Department. Six grounds for denial of the application were stated in the decision, each of which was declared to constitute reasonable cause for such denial. (§ 11702).[2] Three of these, however, were essentially restatements of the three basic grounds, which were these: (1) that Merchandiser's activity was "most akin" to that of a motor vehicle salesman as that term is defined by section 675, subdivision (a)(1), and "issuance of a dealer's license would permit [Merchandiser], by said referrals to many dealers, to gain an unfair economic advantage over those licensed motor vehicle salesmen whose activities are confined to one licensed dealership pursuant to the provisions of section 11806 of the Vehicle Code";[3] (2) that Merchandiser's "present and intended future status, with reference to having no inventory of a stock of motor vehicles

---

to receive a commission, money, brokerage fees, profit, or any other thing of value, from either the seller or purchaser of said vehicle, or (b) Is engaged wholly or in part in the business of selling vehicles or buying or taking in trade, vehicles for the purpose of resale, selling, or offering for sale, or consigned to be sold, or otherwise dealing in vehicles, whether or not such vehicles are owned by such person.''

Section 286 excludes from the definition of ''dealer,'' generally speaking, (a) financing institutions and public officials holding vehicles in the course of contractural arrangements or under legal duty; (b) wholesalers; (c) salesmen employed by dealers; (d) exporters; and (e) persons disposing of vehicles acquired for their own use. It is not contended that Merchandiser falls into any of these categories.

Unless otherwise indicated, all section references hereafter are to the Vehicle Code.

[2] Section 11702 provides: ''The department may issue, or for reasonable cause shown, refuse to issue a license and certificate to any applicant applying for a manufacturer's, transporter's, or dealer's license and certificate.''

[3] Section 675, subdivision (a)(1) provides: ''(a) 'Vehicle salesman' is a person not otherwise expressly excluded by this section, who: (1) Is employed as a salesman by a dealer as defined in Section 285, or who, under any form of contract, agreement, or arrangement with a dealer,

for sale to the public, fails to meet the requirements of sectio[n] 285 of the Vehicle Code in conjunction with section 11701 o[f] said Code [4] in that [it does] not now, and will not in th[e] future qualify as a bona fide motor vehicle dealer''; and (3[)] that the issuance of a license to Merchandiser would b[e] beyond the jurisdiction of the Department because the Legis[-] lature has not· ''authorized a type of license for the type o[f] activity respondents now practice or intend to practice in th[e] future.''

Merchandiser filed a petition for a writ of mandate in th[e] superior court to review the determination of the Department (Code Civ. Proc., § 1094.5; see Gov. Code, § 11523.) Afte[r] reviewing the record of the administrative hearing, ·consider[-] ing extensive briefs submitted by both parties, and hearing oral argument, the court issued a writ of mandate command[-] ing the Department to set aside its decision and reconsider th[e] application in. light of the court's findings of fact and conclu[-] sions of law. The judgment further expressly stated that it was not intended to ''limit or control in any way the discre[-] tion legally vested in the Department of Motor Vehicles.'' (See Code Civ. Proc., § 1094.5, subd. (e).)

The trial court found and concluded in substance that the Department had jurisdiction to issue a dealer·'s license and certificate to Merchandiser and that it was a ·prejudicial abuse of discretion within the meaning of section 1094.5, subdivision (b), of the Code of Civil Procedure[5] to refuse to issue such a license and certificate because the grounds stated in the deci sion of the Department were not legal grounds for the denial of Merchandiser's application and did not constitute reasona[-]

for commission, money, profit, or other thing of value, sells, exchanges, buys, or offers for sale, negotiates, or attempts to negotiate a sale or exchange of an interest in a vehicle required to be registered under this code; . . .''

Section 11806 at the time here relevant provided: ''A vehicle salesman, as defined herein, shall not engage in such activity other than for the account of or for and on behalf of a single employer, who shall be a licensed dealer.''

[4]Section 11701 provides in relevant part: ''Every . . . dealer in ve hicles of a type subject to registration shall make application to the department for a license and certificate containing a general distinguish ing number. The applicant shall submit proof of his status as a *bona fide* . . . dealer as may reasonably be required by the department.'' (Italics added.)

[5]Section 1094.5, subdivision (b), which we shall set forth in full *infra*, provides inter alia that the trial court may base its issuance of the writ upon a ''prejudicial abuse of discretion,'' on the part of the administra tive agency.

[l]e cause for refusal to issue a license (§ 11702). It determined that the ground of undue economic advantage over salesmen was not reasonable cause for refusal because all dealers have such an advantage over salesmen. It determined that the ground of lack of bona fides (§ 11701) because of failure to maintain an inventory was not reasonable cause for refusal because the presence of an inventory was not a requisite of bona fide dealership, and no statute required that an applicant maintain an inventory in order to qualify as a dealer. Finally, the court made findings relative to two grounds not stated in the Department's decision and apparently raised for the first time in the mandate proceeding. It concluded that Merchandiser's lack of a manufacturer's franchise to sell new cars[6] was not reasonable cause to refuse a license because the presence of a franchise was not a requisite of bona fide dealership and no statute required such a franchise of a dealer. It also concluded "That no cause for refusal to issue petitioners a dealer's license was proved on the ground that petitioners did not have an established place of business."[7]

We first summarize the rules governing the trial court's scope of review. Section 1094.5 of the Code of Civil Procedure furnishes the basic framework in subdivisions (b) and (c), which provide: "(b) The inquiry in such a case [i.e., one involving review of an administrative decision by writ of mandate] shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

---

[6]Although the decision of the Department did not state lack of franchise as one of the grounds for refusal, Merchandiser in its petition for a writ of mandate alleged that such lack was "the real underlying basis and reason" for the Department's action.

[7]Section 11712 provides that a dealer's license shall not be issued "to any applicant therefor who has not an established place of business as is defined in this code." Section 320 provides in relevant part: " 'Established place of business' is a place actually occupied either continuously or at regular periods by a dealer . . . where the books and records pertinent to the type of business being conducted are kept. The place of business shall have an office and *in the case of a dealer* . . . *have a display . . . area,* situated on the same property where the business peculiar to the type of license issued by the department is or may be transacted." (Italics added.)

914

"(c) Where it is claimed that the findings are not su[pported] by the evidence, in cases in which the court is autho[rized] by law to exercise its independent judgment on the ev[i]dence, abuse of discretion is established if the court dete[r]mines that the findings are not supported by the *weight of th[e] evidence*; and in all other cases abuse of discretion is estal[blished] if the court determines that the findings are not su[pported] by *substantial evidence* in the light of the whol[e] record." (Italics added.)

The statute does not indicate those cases "in which th[e] court is authorized by law to exercise its independent judg[ment] ment on the evidence," but this has been accomplished b[y] means of judicial decision. Generally speaking, such determi[nation] nation depends on whether the right or interest affected b[y] the administrative decision[8] is a "vested" one. ■ If th[e] right affected is "vested" the decision is reviewed by mean[s] of a limited trial de novo[9] in which the trial court not onl[y] examines the record for errors of law but also exercises it[s] independent judgment upon the *weight* of the evidence pro[duced] duced before the administrative agency together with an[y] further evidence properly admitted by the court.[10] (*Dare v[.] Board of Medical Examiners* (1943) 21 Cal.2d 790, 795 [13[6] P.2d 304]; *Laisne v. California State Board of Optometry* (1942) 19 Cal.2d 831 [123 P.2d 457]; cf. *Southern Cal[.] Jockey Club, Inc. v. California etc. Racing Board* (1950) 36 Cal.2d 167, 173-175 [223 P.2d 1]; *McDonough v. Goodcell* (1939) 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205].)[11]

[8]We deal here only with the review of decisions by statewide administrative agencies not clothed with constitutional quasi-judicial powers. Different rules are applicable to the review by mandate of decisions rendered by statewide administrative agencies in which the Constitution lodges quasi-judicial powers and to the review of the decisions of local agencies. (See *Covert v. State Board of Equalization* (1946) 29 Cal.2d 125, 131-132 [173 P.2d 545].)

[9]See *Dare v. Board of Medical Examiners* (1943) 21 Cal.2d 790, 795-801 [136 P.2d 304].

[10]Section 1094.5, subdivision (d), provides in relevant substance that the court, in cases where it is authorized to exercise its independent judgment on the evidence, may admit and consider "relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded" by the administrative agency. (See and compare *Dare v. Board of Medical Examiners, supra,* 21 Cal.2d 790, 795, 798.)

[11]Cases decided prior to 1945, the effective date of section 1094.5, are relevant to its interpretation because the section codified the rules developed in such cases. (See *Beverly Hills Federal Sav. & Loan Assn.* v. *Superior Court* (1968) 259 Cal.App.2d 306, 313 [66 Cal.Rptr. 183]; *Munns* v. *Stenman* (1957) 152 Cal.App.2d 543, 556 [314 P.2d 67]; California Administrative Mandamus (Cont. Ed. Bar 1966), § 1.1, p. 3.)

If, on the other hand, the right is not "vested" the trial court's scope of review extends only to matters of law appearing on the record of the administrative proceeding, and accordingly its review of the evidence produced below is limited to a determination of whether it is legally sufficient to sustain the decision. (*Southern Cal. Jockey Club, Inc.* v. *California etc. Racing Board, supra,* 36 Cal.2d 167, 175; *McDonough* v. *Goodcell, supra,* 13 Cal.2d 741, 748-749, 752-753.)[12]

The question whether or not the right affected is "vested" is decided by the courts on a case-by-case basis (compare *Thomas* v. *California Emp. Stability Com.* (1952) 39 Cal.2d 501 [247 P.2d 561], with *Bertch* v. *Social Welfare Dept.* (1955) 45 Cal.2d 524 [289 P.2d 485]). It has been held that the denial of a license to a previously unlicensed person does not affect a "vested" right, whereas the suspension or revocation of an existing license does affect such a right. (*Southern Cal. Jockey Club, Inc.* v. *California etc. Racing Board, supra,* 36 Cal.2d 167, 173-175; *McDonough* v. *Goodcell, supra,* 13 Cal.2d 741, 748-749; *Val Strough Chevrolet* v. *Bright* (1969) 269 Cal.App.2d 855, 860 [75 Cal.Rptr. 363].)

We make some observations concerning the nature and scope of review after an appeal has been taken from a judgment of the trial court in a mandamus proceeding. In a case wherein the trial court is authorized to conduct a limited trial de novo (see fn. 9, *ante,* and accompanying text) the province of the appellate court is analogous to that assumed by it in an ordinary civil appeal: only errors of law are subject to its cognizance, and a factual finding can be overturned only if the evidence received by the trial court, including the record of the administrative proceeding, is insufficient as a matter of law to sustain the finding. (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20]; cf. *Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689]; see *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 69-73 [64 Cal.Rptr. 785, 435 P.2d 553]; *Tringham* v. *State Board of Education* (1958) 50 Cal.2d 507, 508 [326 P.2d 850]; see generally 3 Witkin, Cal. Procedure (1954) *supra,* Appeal, § 90, pp. 2254-2256; California Administrative Mandamus (Cont.Ed.Bar 1966) § 15.25, pp. 280-281.) In a case wherein no limited trial de novo is authorized by law, how-

---

[12]See generally *Beverly Hills Federal Sav. & Loan Assn.* v. *Superior Court, supra,* 259 Cal.App.2d 306, 312-318; 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, §§ 16, 18, pp. 2484-2486, 2488-2490.

ever, the trial court itself exercises an essentially appella
function in that only errors of law appearing on the admini
trative record are subject to its cognizance. ■ In such
case, therefore, the trial and appellate courts occupy identic
positions with regard to the administrative record, and tl
function of the appellate court, like that of the trial court,
to determine whether that record is free from legal erro
(*Southern Cal. Jockey Club, Inc.* v. *California etc. Racin
Board, supra,* 36 Cal.2d 167, 175.)[13]

■ Applying these principles to the case at bench, it
clear that the right or interest affected by the Department
decision is not a "vested" right within the meaning of tl
*Jockey Club* and *McDonough* cases. (Cf. *Val Strough Chevr*
*let* v. *Bright, supra,* 269 Cal.App.2d 855, 860.) Therefoi
no limited trial de novo was authorized by law, and the fun
tion of the trial court was to determine whether the Depar
ment, in denying Merchandiser's application for a dealer
license, had commited errors of law. Insofar as this detei
mination concerned a review of the evidence in support of th
findings of the Department, the trial court was required t
uphold such findings if they were supported by substantia
evidence. Our scope of review on appeal is identical to that o
the trial court.

It is not disputed herein that Merchandiser falls within th
definition of a "dealer" which is set forth in section 285
subdivision (a), of the Vehicle Code. (See fn. 1, *ante.*)' It i
equally clear that Merchandiser may not "act as a dealer'
(§ 11700) unless and until it procures a license and certificat
from the Department in accordance with section 11701. Th
latter section, which we have set forth in relevant part abov
(fn. 4, *ante*), requires that an applicant for a dealer's licens
and certificate "submit proof of his status as a bona fid
. . . dealer" to the Department; and section 11702, whicl

---

[13]This rule of review, which is here stated in the context of decision
of ordinary statewide agencies not involving "vested" rights, is also
applicable to appellate review of cases wherein the trial court has re
viewed the decision of an agency having quasi-judicial powers derived
from the Constitution. (See *Stewart* v. *State Personnel Board* (1967)
250 Cal.App.2d 445, 447-448 [58 Cal.Rptr. 280]; *Sweeney* v. *State Per-
sonnel Board* (1966) 245 Cal.App.2d 246, 251 [53 Cal.Rptr. 766];
*Forstner* v. *City and County of San Francisco* (1966) 243 Cal.App.2d
625, 631-632 [52 Cal.Rptr. 621]; *Hingsbergen* v. *State Personnel Board*
(1966) 240 Cal.App.2d 914, 916-917 [50 Cal.Rptr. 59]; *Neely* v. *Cali-
fornia State Personnel Board* (1965) 237 Cal.Rptr. 487, 488-489 [47 Cal.
Rptr. 64]; see also California Administrative Mandamus, *supra,* § 15.26,
p. 281.)

authorizes the Department to refuse to issue a license and certificate "for reasonable cause shown" (fn. 2, *ante*), has been interpreted by it to authorize such refusal when the applicant fails to demonstrate that he is a "bona fide dealer." It is not contended that this interpretation is improper.

The keystone of the Department's decision denying Merchandiser a dealer's license was its determination that Merchandiser is not a "bona fide" dealer because it neither has nor intends to have an inventory of new automobiles for sale to the public. The trial court concluded as a matter of law that this determination was incorrect, and that Merchandiser was a "bona fide" dealer within the meaning of section 11701 in spite of its present and anticipated future lack of inventory. ▓ It thus appears that the primary question for decision by this court is one of statutory interpretation: What is a "bona fide" dealer within the meaning of section 11701 of the Vehicle Code? Clearly, this is a question of law. ▓ Although our review of the factual findings of the Department is governed by the rule of substantial evidence,[14] the ultimate legal conclusion to be drawn from those facts falls within our own peculiar competence.[15] (See and compare *Franco Steel, Inc.* v. *Workmen's Comp. App. Board* (1968) 68 Cal.2d 191, 197 [65 Cal.Rptr. 287, 436 P.2d 287]; *Yakov* v. *Board of Medical Examiners, supra,* 68 Cal.2d 67, 74, fn. 7; *Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 115 [251 P.2d 955]; *Bila* v. *Young* (1942) 20 Cal.2d 865, 867 [129 P.2d 364]; see generally Netterville, *Administrative "Questions of Law" and the Scope of Judicial Review in California* (1956) 29 So.Cal.L.Rev. 434.)

[14]The parties are not in disagreement as to any properly factual finding made by the Department. Thus, the scope and manner of Merchandiser's operation in the area of automobile sales is not in dispute. It is the legal effect of this scope and manner of operation which is here in issue. (See *Covert* v. *State Board of Equalization, supra,* 29 Cal.2d 125, 133.)

[15]"'We recognize, of course, that an administrative agency charged with carrying out a particular statute must adopt some preliminary construction of the statute as a basis upon which to proceed. It is likewise true that the administrative interpretation of a statute will be accorded great respect by the courts and will be followed if not clearly erroneous. [Citations.] But such a tentative administrative interpretation makes no pretense at finality and it is the duty of this court, when such a question of law is properly presented, to state the true meaning of the statute finally and conclusively, even though this requires the overthrow of an earlier erroneous administrative construction. [Citations.] The ultimate interpretation of a statute is an exercise of the judicial power. [Citations.]'" (*Bodinson Mfg. Co.* v. *California Emp. Com.* (1941) 17 Cal.2d 321, 325-326 [109 P.2d 935].)

We have been unable to find, and neither party has referred us to, any legislative history bearing upon the meaning to be ascribed to the phrase "bona fide . . . dealer" as it is used in section 11701. To our knowledge no appellate court of this state has construed the phrase. Therefore we must interpret the statute in question in accordance with applicable rules of statutory construction, fundamental among which are those which counsel that the aim of such construction should be the ascertainment of legislative intent so that the purpose of the law may be effectuated (*Select Base Materials, Inc.* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672], and cases there cited); that a statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts (*Stafford* v. *Los Angeles etc. Retirement Board* (1954) 42 Cal.2d 795, 799 [270 P.2d 12]; *Select Base Materials* v. *Board of Equalization, supra,* 51 Cal.2d 640, 645); and that courts should give effect to statutes "according to the usual, ordinary import of the language employed in framing them." (*In re Alpine* (1928) 203 Cal. 731, 737 [265 P. 947, 58 A.L.R. 1500]; *Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 203 [339 P.2d 801].)

Looking to the entire statutory scheme governing the licensing of automobile dealers (Veh. Code, div. 5, ch. 4, art. 1) we observe that the primary concern therein manifested is that the public be protected from unscrupulous and irresponsible persons in the sale of vehicles subject to registration under the code. This concern is furthered by various provisions seeking to insure, in the words of the Department's brief, "the honesty and integrity of automobile dealers." Thus it is provided that the Department may, generally speaking, refuse to issue a license to a previously licensed person whose previous license has been revoked or suspended for cause (§ 11703, subds. (a) through (c)), or who has been convicted of a crime involving moral turpitude (§ 11703, subd. (d)). A license may be refused to one who has illegally used or permitted use of special license plates issued under a former dealer's license, has commited fraud in making application for the registration of a vehicle, has failed to deliver to a transferee a properly indorsed certificate of ownership, has illegally used a dealer's report of sale (see § 4456), has knowingly dealt in stolen vehicles, has failed to provide and maintain a clear physical division between his dealer's business

and other businesses conducted at the place of business, has violated certain statutory provisions dealing with the registration of motor vehicles, has violated certain statutory provisions dealing with stolen and stored vehicles, has violated certain duly published regulations issued pursuant to statutory provision, or has submitted a subsequently dishonored check or draft in payment of an obligation or fee due the state. (§§ 11703.1, 11705.) An existing license may be suspended or revoked on the same grounds (§ 11705) and may be temporarily suspended when such action is deemed by the Department to be "in the public interest" (§ 11706).

The code further provides that a license shall not be issued to one who does not have an "established place of business" within the meaning of the code and that a licensed person who ceases to have such a place of business shall surrender his license. (§ 11712; see fn. 7, *ante.*) Moreover, the Department may revoke or suspend a license if the holder thereof has failed to post proper signs identifying himself "to enable any person doing business with such dealer to identify him properly." (§ 11709; see § 11705.)

A major feature of the statutory scheme is that requiring an applicant for a license to file with the Department a good and sufficient corporate surety or secured cash bond in the amount of $5,000 "conditioned that said applicant shall not practice any fraud [or] make any fraudulent representation which will cause a monetary loss to a purchaser, seller, financing agency, or governmental agency." (§ 11710; see §§ 11710.1, 11722.) Persons suffering damage by reason of any such fraud or fraudulent representation are under certain conditions provided with a right of action against the dealer, his agents, and the surety on the bond (§ 11711, subd. (a)), and the state and its political subdivisions have a similar right of action for damage caused them (§ 11711, subd. (b)). An applicant must file with the Department an instrument appointing it the applicant's agent for the service of process in any such action. (§ 11710, subd. (c).)

Finally, section 11713 of the code sets forth 14 kinds of activity on the part of a dealer which are unlawful and constitute cause for revocation or suspension of a license (see § 11705). Among these are specifically detailed varieties of misleading or false advertising (subds. (a) through (d), (k)), addition of unauthorized costs to the selling price (subd. (g)), employment of unlicensed salesmen (subd. (h)),

delivery of improperly equipped vehicles (subd. (i)), and tampering with the odometer on any motor vehicle (subd. (n)).

As we have suggested, we consider that the dominant concern of this statutory scheme is that of protecting the purchaser from the various harms which can be visited upon him by an irresponsible or unscrupulous dealer. *It is within this context* that we now address ourselves to the specific phrase whose interpretation is here in question.

"Bona fide" is of course a Latin term whose literal English translation is the compound adjective "good faith." Webster's Third New International Dictionary (1961) indicates that it is or has been used in three different senses. The first of these signifies an absence of fraud or deceit and is used in connection with promises or representations—e.g., a bona fide contract. The second imparts sincerity or "earnest or wholehearted intent"—e.g., a bona fide proposal or suggestion. The third expresses genuineness or authenticity and is the antithesis of the spurious or counterfeit—e.g., a bona fide Renoir.

The term "bona fide" has been used in a variety of legal contexts. Each such use reflects an emphasis upon one or more of the basic meanings set forth above. For example, a "bona fide restaurant" within the meaning of article XX, section 22 (9th par.) of the Constitution is one in which there are actual and substantial sales of food rather than one wherein token sales of food are made "as a mere subterfuge in order to obtain the right to sell liquor." (*Covert* v. *State Board of Equalization, supra,* 29 Cal.2d 125, 134.) The second and third lexical senses of the term here predominate. On the other hand, a "bona fide purchaser" is, generally speaking, one who purchases for value and without actual or constructive notice of prior rights. (See *County Bank of San Luis Obispo* v. *Fox* (1897) 119 Cal. 61, 64 [51 P. 11]; *Frankish* v. *Federal Mortg. Co.* (1939) 30 Cal.App.2d 700, 716 [87 P.2d 90].) Here the notion of honesty and lack of sharp dealing predominates, and therefore the first lexical meaning of the term is paramount. As a final example, a "bona fide agent or broker" within the meaning of section 760 of the Probate Code is one who does not act as a mere middleman or finder but is invested with "authority or duties beyond merely bringing the parties together." (*Batson* v. *Strehlow* (1968) 68 Cal.2d 662, 669, 672 [68 Cal.Rptr. 589, 441 P.2d 101].)

Here again the emphasis falls upon authenticity or genuineness, and the question is whether " 'the thing [is], in fact, just what it purports to be.' " (*Hammond* v. *McDonald* (1942) 49 Cal.App.2d 671, 685 [122 P.2d 332].)

 Viewing the term "bona fide" within the entire statutory scheme in which it appears, we conclude that it is there used in the first lexical sense adverted to above—to wit, that of honesty, fair dealing, and freedom from deceit. There are two basic reasons for this interpretation.

First, we observe that the Legislature in its wisdom has set forth in section 285 of the code an extremely broad definition of the term "dealer," and has excluded from the scope of that definition five categories of persons, including salesmen. (See fn. 1, *ante*.) Through this arrangement of definition and exclusion the Legislature has intimate control over who shall be and who shall not be a "dealer" within the meaning of the code—at any time the Legislature may enact additional exclusions and thereby contract the scope of the term. It has not, however, chosen to exclude persons in Merchandiser's category, i.e., discount houses, and therefore Merchandiser is clearly a "dealer" within the meaning of the code. There is here no question that Merchandiser is "just what it purports to be"—that is, a "dealer"—because it falls within the statutory definition and does not fall within any exclusion. Therefore, because the Legislature has itself undertaken to prescribe who shall be an authentic and genuine "dealer," its use of the term "bona fide" to modify the term "dealer" must have reference to some quality other than authenticity. That quality, as we have suggested, is honesty and fair dealing.

Our second reason for reaching this conclusion is also grounded upon our view of the whole statutory scheme. As we have indicated the dominant concern of the scheme is that of protecting purchasers from irresponsible and unscrupulous persons in the sale of automobiles. It is wholly consistent with and in furtherance of that concern that the Legislature has provided in section 11701 that an applicant submit proof of his bona fides "as may reasonably be required." (See fn. 4, *ante*.) This requirement simply allows the Department to determine whether an applicant possesses those qualities of reliability and honesty which the statutory scheme is intended to foster.

In the case at bench the Department found that Mer-

chandiser was not a "bona fide dealer," and that therefore reasonable cause existed to refuse it a license, because it lacked an inventory of motor vehicles for sale to the public. ▉▉▉ What we have said above, however, makes it clear that a dealer can be found lacking in bona fides within the meaning of the statute only if he is found lacking in the qualities of honesty and reliability for which the statutory scheme manifests concern. ▉▉▉ Although the presence of an inventory might be considered one of the usual indicia of reliability in a dealer, we think it clear that a stock of new cars is not a necessary concomitant to "bona fide" dealership, for one lacking an inventory might demonstrate the reliability and honesty requisite to that status in other ways.[16] In the absence of any evidence or finding to the effect that Merchandiser lacks such honesty and reliability as is requisite to "bona fide" dealership, the conclusion of the Department that Merchandiser is not a "bona fide dealer" cannot be sustained. The trial court properly determined that the decision of the Department cannot be supported on this ground.

The Department's decision was also based upon the ground that if Merchandiser were issued a dealer's license it would thereby gain an unfair economic advantage over licensed motor vehicle salesmen, whose activities are confined to one licensed dealership. (§ 11806.) To state an effect of granting the application, however, is not to state a ground for denial thereof. As the trial court found, all motor vehicle dealers have an economic advantage over salesmen. ▉▉▉ Although the nature of Merchandiser's advantage differs from that enjoyed by most dealers, i.e., those having an inventory of vehicles, the present statutory scheme clearly does not prohibit such a situation. The trial court properly concluded that the existence of Merchandiser's economic advantage over salesmen was not reasonable cause for refusal of a license, and that the decision of the Department cannot be supported on this ground.

The third ground upon which the Department's decision was based was that it had no jurisdiction to issue a license to Merchandiser because the Legislature had not "authorized a type of license for the type of activity respondents now practice or intend to practice in the future." What we have said

[16]It has not been contended in this proceeding that Merchandiser is deficient in those qualities relevant to its bona fides—or that its lack of inventory has an effect upon its honesty and trustworthiness.

above makes it clear that this ground rests upon an erroneous interpretation of the statutory scheme. The trial court properly found that the Department had jurisdiction in the premises.

For the foregoing reasons we have concluded that the Department's stated grounds for refusing to issue a dealer's license and certificate to Merchandiser were legally insufficient to support its decision, and that the trial court therefore properly issued its writ of mandate. (See Code Civ. Proc., § 1094.5, subd. (b).) The judgment must therefore be affirmed.

We do not here consider the two possible grounds of refusal which were raised for the first time in the mandate proceeding. (See fns. 6 and 7, *ante,* and accompanying text.) As to the ground of lack of franchise, the Department has stated in its briefs that it does not require a franchise in order to obtain a dealer's license, and we assume that this position is taken in light of decisions in other states holding that such a requirement would be unconstitutional. (See *Killingsworth* v. *West Way Motors, Inc.* (1959) 87 Ariz. 74 [347 P.2d 1098] ; *Ohio Motor Vehicle Dealers' & Salesmen's Licensing Board* v. *Memphis Auto Sales* (1957) 103 Ohio App. 347 [142 N.E.2d 268] ; *Signore* v. *Rizzolo* (1950) 9 N.J. Super. 539 [75 A.2d 757] ; *Nelsen* v. *Tilley* (1939) 137 Neb. 327 [289 N.W. 388].) We express no present opinion on this point. As to the ground of lack of an "established place of business," we think that the findings of the trial court allow and contemplate that evidence dealing with this matter may be produced and considered by the Department in the course of any subsequent proceedings undertaken pursuant to the judgment of the trial court.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.