[Civ. No. 42222. Second Dist., Div. Five. Aug. 27, 1974.]

VERA L. HORN, Plaintiff and Respondent, v.
DAVID B. SWOAP, as Director, etc., Defendant and Appellant.

## COUNSEL

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, Edward M. Belasco and Anne S. Pressman, Deputy Attorneys General, for Defendant and Appellant.

Richard A. Weinstock and Herbert D. Nowlin for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—Mandate to review the validity of a State Department of Social Welfare ("DSW") regulation or eligibility assistance standard ("EAS"). The trial court issued a writ in favor of petitioner Vera L. Horn ("recipient"), after the DSW refused her claim. Robert B. Carleson, then director of the DSW ("director") appealed.

### FACTS

The superior court proceedings resulted from an administrative deter-

mination by DSW that under regulations promulgated to implement the Welfare Reform Act of 1971 (Stats. 1971, ch. 578, p. 1136) recipient was no longer entitled to a "special need" allowance in addition to the "maximum aid" she was receiving under the aid to families with dependent children ("AFDC") program.

Some background information about the AFDC program may be helpful.[1]

First, the system provides for "minimum basic standards of adequate care." (Welf. & Inst. Code, § 11452, subd. (7).)[2] The "adequate care" standard is based on the number of eligible persons in a family; in recipient's case, at the time, the minimum standard of adequate care for a family of three was $255 a month.

The minimum basic standards of adequate care, however, are not the amounts actualy paid to AFDC recipients. Curiously the "maximum aid" payable recipients (§ 11450, subd. (a)) is less than the "minimum basic standards of adequate care." Thus, in recipient's case, while her family's minimum standard of adequate care was, at the time, $255 a month as noted, she was in fact receiving as her maximum aid, on her basic grant, $235 a month.[3]

This case involves the additional allowance that recipient was receiving for "special needs."

Special needs encompass a variety of items. The specific language of the statutes and the regulations is important.

Special needs were formerly covered by section 11452, subdivision (h), which provided: "Allowances for special needs for any one or more of the following items: special diets upon the recommendation of a physician, transportation, laundry, housekeeping service, and telephone; and utilities in excess of the basic minimum need."

Then, as part of the Welfare Reform Act of 1971, the special needs provisions were amended. Section 11450, subdivision (d)(1), now provides: ". . . a family shall be entitled to receive an allowance for recur-

---

[1] See generally *Rosado* v. *Wyman* (1970) 397 U.S. 397, 407-412 [25 L.Ed.2d 442, 452-456, 90 S.Ct. 1207], and discussion in *Villa* v. *Hall*, 6 Cal.3d 227, 229-230 [98 Cal.Rptr. 460, 490 P.2d 1148], vacated and remanded, 406 U.S. 965 [32 L.Ed.2d 664, 92 S.Ct. 2407], order vacated, 7 Cal.3d 926 [103 Cal.Rptr. 863, 500 P.2d 887].

[2] Unless otherwise indicated, all references are to the Welfare and Institutions Code.

[3] This was the maximum aid payable to a family of three effective August 1971. (Welf. & Inst. Code, § 11450, subd. (a); Stats. 1971, ch. 578, § 28.)

ring special needs not common to a majority of recipients. The county shall pay the full cost of the additional aid . . . . Such recurring special needs shall include but not be limited to special diets upon the recommendation of a physician, and unusual costs of transportation, laundry, housekeeping service, telephone, and utilities not to exceed the minimum basic standards of adequate care."

After new section 11450, subdivision (d)(1) was enacted, the director rescinded the old regulation for special needs and substituted EAS 44-265.22:

"To enable the recipient to meet unusual costs caused by a verified medical problem . . . the following special needs may be allowed based upon recommendation by a doctor or other practitioner that they are necessary . . . The allowance shall be subject to the following conditions and limitations: . . . [¶] .225 A standard allowance of $5.00 per month when the health problem requires excessive use of one or more utilities."

The new regulation is different from the old regulation,[4] from old section 11452, subdivision (h), and, most significantly, from new section 11450, subdivision (d)(1)—which the regulation purports to implement—in two respects: First, EAS 44-265 limits all allowable special needs to those caused by verified medical problems, and, second, it sets a dollar maximum for most categories of special needs, in this case, $5 per month for utilities. (.225.)

Under the old statute and regulation, recipient was receiving $25 per month for excessive utility needs. After the Ventura County Welfare Department informed her that it intended to cut off her special needs allowance, a "fair hearing" (§ 10950) was held before a DSW referee. Relying specifically on the new regulation, EAS 44-265.255, he found that recipient was not entitled to a special needs allowance. The decision was adopted by the director, and this proceeding in administrative mandate followed. (§ 10962.)

The trial court found that EAS 44-265.225 conflicted with section 11450, subdivision (d)(1), and that the regulation was therefore void and unenforceable; it issued its writ remanding the case to the director. The court also awarded attorneys' fees to the recipients' attorneys, the Legal Aid Association of Ventura County.

---

[4] The rescinded regulations are EAS 44-265 through 44-279. The only financial limitation on special needs was that they not exceed "actual cost." (Old EAS 44-265.4.) Specific criteria for special needs were not included in the state regulations but were generally delegated to the county. (Old EAS 44-201.3; 44-265.1.)

## DISCUSSION

The two changes in the special needs statute that triggered the new regulation are, first, the provision that the county pays for special needs[5] —a point of questionable legal relevance here—and, second, that the allowance for special needs shall not "exceed the minimum basic standards of adequate care," described above. We emphasize that the adequate care standards are based on the family unit: in recipient's case, three eligible needy persons. (See § 11452, subd. (7).)

The central issue on this appeal is straightforward: Consistent with new section 11450, subdivision (d)(1), may the director lawfully adopt a regulation for recurring[6] special needs that, first, limits special needs to those resulting from verified medical problems, and, second, imposes a maximum monthly dollar limitation on a particular need?[7]

The standard for testing the validity of the regulation is whether the provision is reasonably necessary to effectuate the purpose of the statute. (Gov. Code, § 11374; e.g., *Morris* v. *Williams,* 67 Cal.2d 733, 748-749 [63 Cal.Rptr. 689, 433 P.2d 697].) "'Administrative regulations that violate acts of the Legislature are void and no protestations that they are merely an exercise of administrative discretion can sanctify them. They must conform to the legislative will if we are to preserve an orderly system of government.' [quoting *Morris* v. *Williams, supra*]." (*California Welfare Rights Organization* v. *Carleson,* 4 Cal.3d 445, 455 [93 Cal.Rptr. 758, 482 P.2d 670].)

 The purpose of section 11450, subdivision (d)(1), is to authorize additional payments by the county, for needs not common to most welfare recipients, subject to the statutory maximum for each family category.

---

[5]Presumably with help from the federal government: "The county shall pay . . . after first deducting therefrom any funds received from the federal government." (§ 11450, subd. (d)(1).) The federal provisions for the AFDC program can be found in 42 United States Code section 601 et seq., and 45 C.F.R. section 201 et seq.

[6]Nonrecurring special needs are covered in subdivision (d), subsection (2). The new regulations also classify the needs into recurring and nonrecurring types. (See new EAS 44-265.3.) The validity of the regulations for nonrecurring special needs is not involved here.

[7]Not all recurring special needs are limited to fixed maximum amounts. The maxima for other recurring special needs are: special diets, $15 (EAS 44-265.21); transportation, $15 (EAS 44-265.221); laundry, $3 (.222); housekeeping service, none (.223); telephone, none (.224); utilities, $5 (.225).

I.

*Verified Medical Problem*

The fair hearing referee, in denying the claim, rather than relying on a change in recipient's circumstances, relied on the new requirement in EAS 44-265.225 that the special need allowance is permissible "when the health problem requires excessive use of . . . utilities." The county welfare worker at the fair hearing admitted that but for the new regulation, recipient would still be receiving the special needs allowance.[8]

New section 11450, subdivision (d)(1), enumerates the special needs as follows: ". . . special diets upon the recommendation of a physician, and unusual costs of transportation, laundry, housekeeping service, telephone, and utilities . . . ." Old section 11452, subdivision (h), similarly provided "special diets upon the recommendation of a physician, transportation, laundry, [etc.] . . . ."

If we read the words in the order in which they appear, the only reasonable interpretation of either old section 11452, subdivision (h), or new section 11450, subdivision (d)(1), is that "the recommendation of a physician" is limited to "special diets." No such phrase qualifies any of the other special needs. The director's contention that he had discretion to apply the qualification to other special needs seems nothing less than the assertion of a power to rewrite the statute.[9]

Nevertheless, the director contends that since the statute does not specifically prohibit limiting special needs to those that are medically required, he is free to issue regulations that do not directly conflict with the language of the statute. We disagree.

First—and most obviously—the Legislature need not prohibit an interpretation that cannot be reasonably inferred from the statute.

---

[8]Although the director now contends that the evidence does not support recipient's claim for special needs, that issue was never raised at the "fair hearing." We have scrutinized the administrative record and find that the following finding by the superior court is not only correct, but compelled: "11. The department's determination was based solely on the implementation of E.A.S. 44-265. There was no change in petitioner's need, nor in any other relevant facts; but for the implementation of E.A.S. 44-265 petitioner would have continued to be eligible for the allowance as she had in the past. The Transcript of Testimony, part of respondent's Administrative Record on file in this action is unequivocal on this point."

[9]Even new regulation EAS 44-265 recognizes that "special diets" are to be treated differently. The requirement for "special diets" appears in EAS 44-265.21 under "Therapeutic Diet." Then, EAS 44-265.22 provides for "Other Recurring Special Needs."

Second, that the Legislature did not specifically prohibit the director from limiting special needs to medically required needs does not, in this case, reflect true silence. ■ The Legislature is presumed to be aware of a long-standing administrative practice—in this case, the predecessor regulation that did not limit special needs to medically required needs. If the Legislature, as here, makes no substantial modifications to the act, there is a strong indication that the administrative practice was consistent with the legislative intent. (*El Dorado Oil Works* v. *McColgan,* 34 Cal.2d 731, 739 [215 P.2d 4].)

Third, the Legislature has made clear that the "provisions of law relating to a public assistance program shall be liberally construed to effect the stated objects and purposes of the program." (§ 11000.) A categorical limitation of otherwise justified "unusual costs of transportation, laundry, housekeeping service, telephone, and utilities" to those that are medically related is not consistent with the legislative purpose.

*Dollar Limitation*

Much of what we have said about the restriction of the special needs to medically related needs applies to the issue whether the director can validly limit the standard allowance for "excessive use of one or more utilities" to $5 a month. Again, no such limitation appeared in the predecessor regulation. (*Ante,* fn. 4.)

New section 11450, subdivision (d)(1), did apparently change prior law by providing that allowable special needs may "not . . . exceed the minimum basic standards of adequate care." The minimum basic standards of adequate care, as we noted above, are higher than the "maximum aid" payable under section 11450, subdivision (a). Both are based on family size. Thus, recipient's basic grant was, as noted, $235 a month while the minimum standard of adequate care for a family of three was $255 a month (§ 11452, subd. (7)).

■ Recipient concedes, and we agree, that the limitation in new section 11450, subdivision (d)(1), means that the total of special needs may not exceed the difference between the maximum aid payable and the minimum standard of adequate care. In recipient's case, this is $20. There is, again, nothing in the statute to suggest that the economies resulting from a ceiling on all special needs were intended to be effectuated by arbitrary limits on each special need, particularly since the enumerated special needs cover a range of items that reflect differing family circumstances.

More important, the maximum payable for special needs is keyed to

the family unit. While recipient's maximum special need allowance was $20 a month, the maximum for a family of five, at the time, was $42. The Legislature reasoned that the potential special needs were likely to increase in amount with the family size. A flat limitation of $5 per month for utilities, regardless of family size or need, is inconsistent with that legislative purpose.

The director's attempts to justify the regulation merely reinforce the conclusion that the regulation has little to do with the statute. He expresses concern for situations in which a recipient has more than one special need. Doubtless, there will be cases in which the total special needs exceed the maximum amount payable under section 11450, subdivision (d)(1). These cases cannot be helped because of the statutory ceiling. We cannot see, however, how the hardship in which they result is cured by a regulation which may make a bad situation worse by imposing a series of subceilings.

The stated objective of "uniform assistance" simply does not apply to a statute intended to provide for "special needs," at least absent a clear legislative statement that each special-needs classification may be or shall be subject to a standard or maximum.

In conclusion, regulation EAS 44-265.22 is contrary to the express legislative mandate of Welfare and Institutions Code section 11450, subdivision (d)(1).

## II.

### *Attorneys' Fees*

The trial court awarded $975 to the recipient's attorneys, the Legal Aid Association of Ventura County, under section 10962, which provides: "The applicant or recipient shall be entitled to reasonable attorney's fees and costs, if he obtains a decision in his favor."

The director contends that attorney's fees may be awarded only the applicant or recipient and may not be awarded a legal services organization, where, as here, the services are rendered at no charge to the client and the attorneys are on salary. The director also contends that the award was, in any event, excessive.

*Trout* v. *Carleson,* 37 Cal.App.3d 337, 342-343 [112 Cal.Rptr. 282], disposes of the argument that section 10962 does not permit an award for attorney fees where the welfare recipient is represented by a legal services organization such as the Legal Aid Association of Ventura County, which represents recipient in this case. That in *Trout* the trial court awarded the

fees to the recipient on the understanding that he would turn it over to the attorneys, while in this case the judgment provides "[p]etitioner shall recover her attorney's fees . . . to be paid by respondent directly to counsel for petitioner" is a distinction without a difference.

■ As for the amount of the fee, the director simply has not shown that the trial court's award constituted an abuse of discretion. (See *Excelsior etc. School Dist.* v. *Lautrup,* 269 Cal.App.2d 434 [74 Cal.Rptr. 835].) We hesitate to prescribe any particular formula for the award of attorney's fees in cases of this nature. Experience has shown that mechanical formulae for fixing of attorney's fees can result in awards which, on the facts of particular cases, are either excessive or unjustly low. It is primarily the trial court which is familiar with local conditions and the facts of each particular case. In this instance, we see no reason for not deferring to its judgment.

Recipient is also entitled to have her attorneys compensated on appeal. It is our judgment that the reasonable value of fees earned in connection with this appeal should be determined by the trial court when it determines costs on appeal. (*Clejan* v. *Reisman,* 5 Cal.App.3d 224, 241-242 [84 Cal. Rptr. 897].)

The judgment appealed from is affirmed; our remittitur will carry with it authority for the trial court to award respondent on this appeal, reasonable attorneys' fees in addition to the usual costs on appeal.

Stephens, J., concurred.

**ASHBY, J.**—I concur with the majority in the interpretation of Welfare and Institutions Code section 11450. However, I dissent from that portion of the opinion which relates to the award of attorney's fees.

There is no question that legal aid has provided a valuable service in the instant case. This, however, in no way diminishes the fact that nothing in Welfare and Institutions Code section 10962[1] in any way authorizes the

---

[1]Section 10962 provides: "The applicant or recipient or the affected county, within one year after receiving notice of the director's final decision, may file a petition with the superior court, under the povisions of Section 1094.5 of the Code of Civil Procedure, praying for a review of the entire proceedings in the matter, upon questions of law involved in the case. Such review, if granted, shall be the exclusive remedy available to the applicant or recipient or county for review of the director's decision. The director shall be the sole respondent in such proceedings. No filing fee shall be required for the filing of a petition pursuant to this section. Any such petition to the superior court shall be entitled to a preference in setting a date for hearing on the

payment of attorney's fees where legal services are provided without charge to the applicant or recipient by an organization designed for the purpose of providing free legal services to persons who cannot afford private counsel.

An individual eligible for welfare very probably could not enforce his rights under the law if to do so he were required to pay attorney's fees. In an effort to resolve this problem, the Legislature enacted Welfare and Institutions Code section 10962.

It is not the purpose of this provision to dispense fees to attorneys without regard to whether or not those fees are owed by the indigent applicant, nor is there any indication that the Legislature intended to require payment of attorney's fees for the purpose of punishing the state for losing its lawsuit. The Legislature in enacting section 10962 intended to provide to the applicant or recipient the means to enforce his rights under section 11450 et seq. without being subjected to the burden of raising the money necessary for the payment of legal fees. The words of the statute are clear and unambiguous. They should not be added to by this court. (*People* v. *Knowles,* 35 Cal.2d 175 [217 P.2d 1]; *Merrill* v. *Department of Motor Vehicles,* 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].)

The majority bases its award of fees on *Trout* v. *Carleson,* 37 Cal.App. 3d 337 [112 Cal.Rptr. 282]. The only authorities for an award to a legal services organization cited by the court in that case are *State* v. *Carney,* 172 Ohio St. 175 [15 Ohio Ops.2d 326, 174 N.E.2d 253], and *Ferrigno* v. *Ferrigno,* 115 N.J. Super. 283 [279 A.2d 141]. Neither of these decisions is helpful in reaching the conclusion that an award can be made under the California statute where the applicant or the recipient has not incurred an obligation for legal fees.

In *State* v. *Carney, supra,* at page 254, the court relied on a statute which provided that " '[c]ounsel assigned in a case of felony under section 2941.50 of the Revised Code shall be paid for their services by the county, and shall receive therefor: . . .' " In other words, the statute specifically mandated payment to counsel for the rendering of the prescribed services. Furthermore, counsel in that case was employed by the Legal Aid Society under an agreement to remit any fees collected to the agency funding the society. Thus, the fees awarded went to the funding agency rather than the Legal Aid Society.

---

petition. No bond shall be required in the case of any petition for review, nor in any appeal therefrom. *The applicant or recipient shall be entitled to reasonable attorney's fees and costs, if he obtains a decision in his favor.*" (Italics added.)

*Ferrigno* v. *Ferrigno, supra,* involved a situation where the court assessed attorney's fees against the husband in a divorce action stating its reasons as follows on page 142: ". . . I do not believe that a defendant husband against whom a judgment for divorce has been awarded in a contested case should reap the benefits of free legal representation to his wife. Nor should a husband be encouraged to litigate under the assumption no counsel fee will be adjudged in favor of the indigent plaintiff represented by Legal Services. Put in another way, the public should be relieved from the financial burden of obtaining an indigent plaintiff's divorce or successfully defending against a husband's complaint, to the extent that the husband is able to pay all or part of her attorney's fee. The taxpayer has an interest in recovering where possible a portion of the costs in these situations. [¶] Plaintiff is awarded a counsel fee of $100 payable to the Treasurer of the United States of America."

In the case at bench there is no similar benefit to the taxpayers since the state taxpayers are being required to pay attorney's fees to attorneys employed by an organization which is itself publicly financed. Again, it should be noted that in both cited cases the fees awarded went to the funding agency of the legal aid organization and not to the organization itself or to its attorneys.

In my opinion section 10962 does not authorize the payment of attorney's fees unless the applicant or recipient legally has incurred an obligation to pay attorney's fees. The basic purpose of publicly financed legal aid is to provide legal services to persons unable to afford the services of a private attorney. The award of attorney's fees in the instant case is approximately $40 an hour. The amount of the award and the fact that in the instant case the efforts of legal aid have resulted in the establishment of a clear precedent regarding the special needs allowance under Welfare and Institutions Code section 11450 should encourage private attorneys to take similar cases in the future.

Appellant's petition for a hearing by the Supreme Court was denied October 24, 1974.