[No. A045070. First Dist., Div. One. Oct. 10, 1990.]

UNION OIL COMPANY OF CALIFORNIA, Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, and Richard F. Finn, Deputy Attorney General, for Defendant and Appellant.

Morrison & Foerster, Thomas H. Steele, Joyce B. Hughes and Mark Windfeld-Hansen for Plaintiff and Respondent.

## OPINION

### McCARTY, J.*—

#### SUMMARY OF CASE

Revenue and Taxation Code section 6358.1 exempts from taxation the sale of "[w]aste byproducts" when used as a fuel source in lieu of oil, natural gas, or coal.

Plaintiff sued for a refund of sales tax imposed on the sale of petroleum coke produced at its plant in Santa Maria, California. The issue is whether the petroleum coke produced at this plant is a waste byproduct within the meaning of Revenue and Taxation Code section 6358.1, and, therefore, exempt from sales and use tax. The trial court concluded it was and entered judgment for plaintiff.

The judgment is affirmed.

#### *Statement of Facts*

The parties stipulated to many of the underlying facts:

Union Oil Company of California (hereafter, Union) was engaged in the business of refining crude oil into finished petroleum products. Petroleum coke is a solid byproduct of the refining processes. Much of the sulfur originally contained in the crude oil and almost all of the metals are concentrated in the petroleum coke. Petroleum coke quality can vary significantly from refinery to refinery. The higher the level of sulfur and metals, the less the value of the petroleum coke.

Union produces approximately 320,000 to 380,000 tons of petroleum coke per year at its Santa Maria refinery. Union refers to the product as "SMPC" (Santa Maria Petroleum Coke). Because of its high sulfur and vanadium content, SMPC is classified as fuel-grade petroleum coke. SMPC is an unavoidable consequence of Union's Santa Maria operations. Union does not produce it for its commercial value, and its value is "small" relative to that of liquid fuels. Union assigns no cost to the production of SMPC.

All sales at issue in this case were made to Kerr-McGee Chemical Corporation (hereafter, Kerr-McGee). Kerr-McGee had special pollution controls at its Trona, California, chemical manufacturing facility which allowed it to burn SMPC. It used a mixture of 40 percent SMPC and 60 percent coal. Kerr-McGee purchased approximately 200,000 to 220,000 tons of SMPC

---

* Assigned by the Chairperson of the Judicial Council.

per year.[1] Kerr-McGee's purchases of SMPC constituted approximately two-thirds of the fuel-grade petroleum coke "consumed on the West Coast." Kerr-McGee discontinued purchases of SMPC in May 1988. Union expects to sell SMPC to overseas exporters.

Union paid state and local sales taxes in the amount of $980,779.90 on sales of SMPC to Kerr-McGee for the period January 1, 1981, through September 30, 1983. Union paid $1,007,160.58 for the period October 1, 1983, through December 31, 1986. The State Board of Equalization (hereafter, the Board) denied Union's claims for refunds of the taxes paid.

The trial court heard testimony from four witnesses. An engineer from Kerr-McGee testified as to Kerr-McGee's purchases and use of petroleum coke. The plant superintendent from Union's Santa Maria refinery testified as to Union's sales of SMPC, and the characteristics of the SMPC sold to Kerr-McGee. James Waller testified as an expert on behalf of Union, and J. R. Friday testified as an expert on behalf of the Board, regarding petroleum coke production, sales and economics.

Waller testified: petroleum coke is viewed as an undesirable fuel because of its high sulfur and metal content; customers will purchase it only when it costs sufficiently less than coal to outweigh the disadvantages of using it; SMPC is of the lowest quality and value of any petroleum coke produced in California; and petroleum refiners view the petroleum coke they produce as a disposal problem.

Friday testified: petroleum coke has not been used as landfill or otherwise discarded; energy users prefer to use coal only because it is more abundant and easier to obtain; petroleum coke is not waste because it is a fuel product and refineries are built to make fuel; and people in the refinery business do not think of petroleum coke as waste.

### Procedural History

On July 10, 1985, Union filed a complaint for refund of taxes for the period January 1, 1981, through September 30, 1983. Union filed a second complaint, on February 25, 1988, for refund of taxes for the period October 1, 1983, through December 31, 1986. The two cases were consolidated.

The trial court found "that the use of the term 'waste' in conjunction with byproduct [within the meaning of Revenue and Taxation Code section 6358.1][2] means that a product must be a low-value byproduct in order to qualify for the exemption." This definition, according to the court, is consis-

---

[1] Most of the rest of the SMPC produced at the Santa Maria refinery was sold to a single customer for use in a process to produce phosphorous.

[2] All further statutory references are to the Revenue and Taxation Code.

tent with the dictionary definition of waste, the interpretation of the term in the oil industry, and the interpretation of the term by analogous federal authority. The court found that the "legislative history of Section 6358.1 indicates that the Legislature's principal purpose in enacting the exemption was to provide an economic incentive for the use of alternative energy sources so as to reduce California's dependence on conventional fuels." The only limitation was that the Legislature, by use of the word " 'waste,' " did not intend to exempt "moderate to high value byproducts." Based on the evidence presented at trial, the court determined SMPC was in fact a "low-value byproduct" and thus a "waste byproduct" within the meaning of section 6358.1.

The trial court entered judgment for Union. The court ordered the refund of the taxes collected plus interest.

The Board appeals.

*Discussion*

I. *Standard of Review*

The parties agree the interpretation of the term "[w]aste byproducts," within the meaning of section 6358.1 presents a question of law. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 917 [80 Cal.Rptr. 89, 458 P.2d 33].)

The trial court, in its statement of decision, noted that it found the witnesses credible and qualified to testify. However, it remarked it was "particularly impressed with the credibility, knowledge and background of Mr. Waller."

The vast majority of the facts were established by stipulation. The two expert witnesses, Waller and Friday, differed only in their opinion on whether petroleum coke is a desirable fuel source and on the definition of waste byproduct. The latter matter was for the court to determine and the opinions of the witnesses were irrelevant. (See *Communications Satellite Corp.* v. *Franchise Tax Bd.* (1984) 156 Cal.App.3d 726, 747 [203 Cal.Rptr. 779].)

The trial court apparently accepted Waller's opinion that petroleum coke is not a desirable fuel source. Given that finding of fact plus all the stipulated and undisputed facts, the ultimate legal conclusion to be drawn from these facts is left to this court. (*Crocker National Bank* v. *City and County of San Francisco* (1989) 49 Cal.3d 881, 888-889 [264 Cal.Rptr. 139, 782 P.2d 278]; *Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d at p. 917.)

■  Tax exemption statutes are to be strictly construed against the taxpayer. (*Santa Fe Transp.* v. *State Board of Equal.* (1959) 51 Cal.2d 531, 539 [334 P.2d 907]; *Framingham Acceptance Corp.* v. *State Bd. of Equalization* (1987) 191 Cal.App.3d 461, 463 [236 Cal.Rptr. 771].)  (2)  An administrative agency's interpretation of a statute it is charged with implementing is entitled to great weight unless shown to be clearly erroneous. (*Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1].) Again, however, the ultimate interpretation of a statute is left to the courts. (*Merrill* v. *Department of Motor Vehicles, supra*, 71 Cal.2d at p. 917, fn. 15.)

II.  *Taxation of Sales of SMPC*

■  Section 6358.1, at the time of its enactment in 1983, provided:

"There are exempted from taxes imposed by this part the gross receipts from the sale of and the storage, use, or other consumption in this state of either of the following:

"(a). . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) Waste byproducts from agricultural or forest products operations, municipal refuse, or manufacturing, which are delivered in bulk, and are used in an industrial facility as a fuel source in lieu of the use of either oil, natural gas or coal. . . ."

The Legislature amended section 6358.1 in 1983 to specifically exempt from taxation "the use of still gas produced in the refining process from purchased crude oil." (Stats. 1983, ch. 1059, § 1, pp. 3755-3756.)[3]

As the trial court found, the purpose of this statute is to encourage development of alternative fuel sources in order to reduce dependence on conventional fuel sources, a goal that appears prudent in view of current events in the Middle East.

"Waste byproducts" is not defined in section 6358.1 nor elsewhere in the Revenue and Taxation Code. The parties agree SMPC is a byproduct. The dispute here is whether it is a *waste* byproduct, within the meaning of section 6358.1.

---

[3] The 1983 amendment also deleted the requirement that the waste byproduct be "delivered in bulk." Section 6358.1 currently provides:

"(a) There are exempted from taxes imposed by this part the gross receipts from the sale of and the storage, use, or other consumption in this state of either of the following:

"(1) Organic products grown expressly for fuel purposes.

"(2) Waste byproducts from agricultural or forest products operations, municipal refuse, or manufacturing which are used in an industrial facility as a fuel source in lieu of the use of either oil, natural gas, or coal."

"(b) In addition to subdivision (a), the exemption under this section shall include the use of still gas produced in the refining process from purchased crude oil."

■ "Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. [Citations.] . . . The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]" (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

The parties cite the definitions of "waste" appearing in Webster's Ninth New Collegiate Dictionary, at pages 1330-1331. The following pertinent definition is set forth for waste, when used as an adjective: "[D]iscarded as worthless, defective, or of no use : REFUSE . . . ." That dictionary also provides the following definitions for waste, when used as a noun: "damaged, defective, or superfluous material produced by a manufacturing process: as (1): material rejected during a textile manufacturing process and used usu. for wiping away dirt and oil <cotton~> (2): SCRAP (3): an unwanted by-product of a manufacturing process, chemical laboratory, or nuclear reactor."

■ The Board submits that, as used in section 6358.1, waste means "something that is *normally* or *generally* considered useless or worthless, something that is *generally* or *normally* thrown away as trash." (Italics supplied by the Board.) The Board rejects the "low-value byproduct" definition endorsed by Union and accepted by the trial court, because a low-value byproduct, such as SMPC, can generate large revenues. In the case of SMPC, argues the Board, it is all useful; it is never thrown away, therefore, it cannot be waste.

In the abstract, the Board's definition appears reasonable. But it fails when the meaning of waste byproduct is viewed within the context of the statute, and within the context of the facts before this court.

From the language of the statute, one can see its purpose is to encourage the use of fuel alternatives to oil, natural gas, or coal. The bill adding section 6358.1 was sponsored by farm interests, and was originally intended to apply to agricultural waste byproducts. The statute as enacted, however, applied to other waste byproducts including waste byproducts from manufacturing. Nothing in the language of the statute evinces an intent to limit the exemption to products which generate only insignificant revenues, or to manufacturers whose primary business is not the making of fuel. Exhibits introduced at trial showed the Board has considered the sale or use of the following products exempt from taxation under section 6358.1: recycled

motor oil, almond shells and prunings, used automobile and truck tires, and "Woodex," a mixture of rice hulls and sawdust. The Board has also considered a form of petroleum coke known as "fluid coke," which is used by refineries in the refining process, to be exempt from tax under section 6358.1.

The Board attempts to rely on the definition of waste employed by the Federal Energy Regulatory Commission (hereafter, FERC) in interpreting the Federal Power Act (16 U.S.C. 792 et seq.) and the Public Utility Regulatory Policies Act of 1978 (16 U.S.C. 2601 et seq.). Fuel characterized as "waste" is eligible as fuel for small power production facilities pursuant to FERC regulations. (18 C.F.R. § 292.204(b); see *In the Matter of Electrodyne Research Corp.* (1985) 32 F.E.R.C. ¶ 61,102.) The specific fuel at issue in *Electrodyne* was anthracite culm. As explained in *Electrodyne*, the FERC classifies as waste a byproduct of a commercial or industrial process with little or no commercial value. The FERC found almost no market existed for anthracite culm, and therefore, it should be classified as waste.

Unfortunately for the Board, its attempt to contrast SMPC with anthracite culm is severely undercut by an FERC order that gives examples of generic wastes. (FERC order No. 70; see *In the Matter of Electrodyne Research Corp., supra*, 32 F.E.R.C. ¶ 61,102.) Included in the list of examples in the FERC order is petroleum coke.

The stipulated facts and the testimony at trial show SMPC is an undesirable fuel source in the United States. In order to use it as fuel, special pollution controls are required. If the cost of SMPC is sufficiently low, it can be used as a partial substitute for coal. Its commercial value is minimal as compared to Union's other principal products.

SMPC is a waste byproduct from manufacturing used in an industrial facility as a fuel source in lieu of coal. The trial court properly found Union's sales of SMPC to Kerr-McGee were exempt from taxation pursuant to section 6358.1.

III. *Admission of the Board Staff Memorandum*

The Board contends the trial court erred when it admitted into evidence a Board staff memorandum that concluded sales of SMPC qualified for the section 6358.1 exemption. The Board argues the staff memorandum reflects the mental processes of the Board and/or its staff, and, therefore, was inadmissible. (Citing *Travelers Indemnity Co.* v. *Gillespie* (1990) 50 Cal.3d 82, 102-103 [266 Cal.Rptr. 117, 785 P.2d 500]; *Board of Administration* v. *Superior Court* (1975) 50 Cal.App.3d 314, 319 [123 Cal.Rptr. 530].)

As Union points out, the Board has failed to explain how this single exhibit affected the outcome of the trial in any way. Even if it were error to admit the exhibit, which is far from certain, such error would require reversal only if it is reasonably probable a result more favorable to the Board would have been reached in the absence of such error. (*Continental Baking Co.* v. Katz (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889].)

There is no indication the trial court attached any special significance to this exhibit. Other evidence to which no objection was interposed showed that the Board staff had initially believed the section 6358.1 exemption applied to sales of petroleum coke.

The admission of the Board staff memorandum, if error, was harmless.

The judgment for Union is affirmed.

Newsom, Acting P. J., and Stein, J., concurred.