[Civ. No. 56166. Second Dist., Div. Five. Dec. 29, 1980.]

OTIS BOXX, JR., Plaintiff and Respondent, v.
BOARD OF ADMINISTRATION, PUBLIC EMPLOYEES'
RETIREMENT SYSTEM et al., Defendants and Appellants.

COUNSEL

George Deukmejian, Attorney General, David W. Halpin, Deputy Attorney General, Telanoff, Wallin, Kress & Dilkes, Robert L. Kress, Peter L. Wallin and Cary S. Reisman for Defendants and Appellants.

Samuel J. Wells and Silver, Wells & Kreisler for Plaintiff and Respondent.

OPINION

STEPHENS, J.—The Housing Authority of the City of Los Angeles (hereinafter referred to as HACLA) and the Public Employees' Retirement System (hereinafter referred to as PERS) appeal from a judgment ordering the issuance of a writ of mandamus. The writ compelled them to grant respondent a "local safety member" classification, to amend the original contract between PERS and HACLA to provide classification for respondent as a "local safety member," and to grant respondent a disability retirement.

We conclude that the trial court's judgment should be affirmed because: (1) HACLA, under contract with PERS, intended to cover all of its employees and PERS also so intended, but by mutual error one group of employees was misclassified; (2) respondent was engaged in active law enforcement which should have qualified him under Government Code section 20020 for classification under PERS as a "local safety member"; and (3) Government Code sections 20180 and 20165 provide for the correction of respondent's mistaken classification in PERS.

The facts are as follows: On or about December 15, 1964, HACLA contracted with PERS to provide retirement benefits for HACLA employees.[1] The contract specifically provided coverage for all "local

---

[1]Section 20492 of the Government Code provides in part: "*Required inclusion of employees: Agreement for, and disapproval of, exclusions: Compulsory membership.*

"The contract shall include in this system all firemen, policemen, county peace officers, and other employees of the contracting agency, except as exclusions in addition to the exclusions applicable to state employees may be agreed to by the agency and the board. Such exclusions shall be based on groups of employees such as by departments,

miscellaneous members" of HACLA and specifically excluded from coverage "local safety members."

Respondent was hired by HACLA as a patrolman on July 6, 1971, a position he held until July 25, 1975.[2]

Respondent, pursuant to the aforementioned contract, was, at all times, classified as a "miscellaneous member" of PERS.

Respondent was injured in the scope of his employment in a vehicular accident on June 24, 1974. Application was made for disability retirement as a "miscellaneous member" but was denied because respondent had not worked the minimum five years required to receive its benefits, he being terminated some months short of the five-year employment minimum required by Government Code section 21021: "Any member incapacitated for the performances of duty shall be retired for disability pursuant to this chapter if he is credited with five years of state service, regardless of age."

Respondent sought coverage as a "local safety member" which was denied by the executive officer of PERS because he was not convinced that respondent satisfied the qualifications for "local safety member."

At a subsequent hearing, a hearing officer appointed by PERS rendered a proposed decision, in which he found that respondent's duties did qualify him as a "local safety member." The PERS Board determined that it would decide the matter itself[3] and issued its decision which inter

---

duties or age, and not on individual employees, and such exclusions of groups may be made by amendments to contracts, with respect to future entrants into such a group. The board may disapprove the exclusion of any group, if in its opinion the exclusion adversely affects the interests of this system. Membership in this system is compulsory for all employees included under a contract."

Section 20492 is a provision of part 3 of the California Government Code, and therefore is a provision of the "part" spoken of in section 20180. At the time HACLA entered into its contract with PERS and at all times thereafter, it was required by the act to include all of its employees except those excluded by the act or by specific agreement with the board.

[2]Respondent was disabled and did not work from June 24, 1974, until March 1975. He returned to serve as a radio operator and was terminated by HACLA on December 22, 1975.

[3]Government Code section 11517, subdivision (c), provides in pertinent part: "If the proposed decision is not adopted as provided in subdivision (b), the agency itself may decide the case upon the record, including the transcript, with or without taking addi-

alia found that respondent performed duties which would qualify him as a "local safety member," but that the HACLA-PERS contract excluded such classification and therefore respondent could not be a "local safety member." Respondent thus did not qualify for benefits and disability under PERS.[4]

Respondent filed a petition for writ of mandate on October 15, 1976, and the court ordered it to issue, requiring appellants to: (1) amend the HACLA-PERS contract to provide coverage for respondent as a "local safety member," (2) reclassify respondent as a "local safety member" from the date he was first employed by HACLA, (3) make any adjustments necessary with PERS to effectuate the above status for respondent under Government Code section 20165, and (4) grant respondent's application for disability retirement as a "local safety member."

HACLA and PERS appeal this judgment.

We consider first whether the trial court and PERS properly classified respondent. *Crumpler v. Board of Administration* (1973) 32 Cal. App.3d 567, 576 [108 Cal.Rptr. 293], states: "Thus, whether the performance of those duties [animal control officer] 'clearly fall within the scope of active law enforcement service' within the meaning of the statute [Gov. Code, § 20020] becomes one of statutory interpretation (*Merrill v. Department of Motor Vehicles*, 71 Cal.2d 907, 917 [80 Cal. Rptr. 89, 458 P.2d 33]) and we are not bound by either the board's or the trial court's determination which, though expressed as findings of fact, are but legal conclusions."

### Government Code section 20020

At the relevant time herein, Government Code section 20019 provided: "'Local safety member' includes all local policemen, firemen, and

---

tional evidence, or may refer the case to the same hearing officer to take additional evidence."

[4]Government Code section 21022 reads in pertinent part as follows:"Any patrol, state safety member...or local safety member incapacitated for the performance of duty as the result of an industrial disability shall be retired for disability, pursuant to this chapter, regardless of age or amount of service."

county peace officers employed by a contracting agency who have by contract been included within this system."

To be classified as a "local policeman" [local safety member] under Government Code section 20020, one must be an officer or employee of a police department and engaged in active law enforcement.[5]

■ The PERS Board and the trial court both found that respondent's duties met the definition of "local policeman" contained in Government Code section 20020, which would have qualified him as a "local safety member" for retirement purposes under Government Code section 20019. Along with this the trial court made a finding of fact that respondent was performing duties of a police officer for HACLA.

Appellants HACLA and PERS challenge this ruling and contend that "HACLA is not an agency or district authorized by statute to maintain a police department, and HACLA patrol officers are not and never have been employees of a local police department.... Moreover, its patrol officers...had no law enforcement powers."

Appellants assert that HACLA patrolmen are not "local policemen," because no statute authorizes the establishment of a HACLA police department. This ignores Penal Code section 830.4, which gave HACLA police officers peace officer status.[6] While this statute does not specifically establish a police department within HACLA, we believe it recognizes the de facto existence of one to effectuate their status.

---

[5]At the relevant time herein, Government Code section 20020 provided: "'Local policeman' means any officer or employee of a police department of a contracting agency, except one whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise and whose functions do not clearly fall within the scope of active law enforcement service even though such an employee is subject to occasional call, or is occasionally called upon, to perform duties within the scope of active law enforcement service, but not excepting male employees assigned to identification or communication duties, or persons employed and qualifying as patrolmen or equal or higher rank irrespective of the duties to which they are assigned."

[6]Penal Code section 830.4, subdivision (a)(18), provided that Housing Authority patrol officers employed by the City of Los Angeles were peace officers while engaged in the performance of the duties of their employment. (Stats. 1974, ch. 1006, § 1.)

Appellants' assertion also ignores Health and Safety Code sections 34312 and 34278.[7] We believe that implicit in these statutes is the authority for HACLA to provide security or police personnel, as required, to operate the housing projects, whether there was in fact a designated police department or not.

HACLA and PERS contend that HACLA's patrolmen had none of the duties and powers of "peace officers" as used in Penal Code section 830 et seq., until Penal Code section 830.4, subdivision (17)—then (18)—was added effective January 1975. We reject this assertion.[8] Status under Penal Code section 830.4 as "peace officers" does not deny HACLA patrolmen qualification under the retirement statute of Government Code section 20019 as "local safety members," because the purpose of Penal Code section 830 et seq., is "merely to authorize the named persons to exercise the statutory powers of a peace officer." (*Dyas* v. *Superior Court* (1974) 11 Cal.3d 628, 635-636, fn. 3 [114 Cal.Rptr. 114, 522 P.2d 674].) Obviously, police departments could exist and law enforcement powers be exercised by organizations not named in the section.

In *Crumpler* v. *Board of Administration, supra*, 32 Cal.App.3d 567, 576, the court dealt with the issue of whether animal control officers for the City of San Bernardino's police department qualified as "local safety members" or "miscellaneous members" under Government Code sections 20019 and 20020. Implicit in its consideration is that labeling the individuals as members of a police department is not as important as whether they are engaged in active law enforcement.[9]

---

[7]Health and Safety Code section 34312 authorizes the Housing Authority to "(a) Prepare, carry out, acquire, lease, and *operate* housing projects...." (Italics added.)

Health and Safety Code section 34278 enables the Housing Authority to "employ ...such other officers, agents, and employees as it requires, and shall determine their qualifications, duties, terms of employment and compensation."

[8]Appellant HACLA further argues that because respondent served as a radio operator from the time of the disabling accident to the point of his termination, he did not qualify as a peace officer under Penal Code section 830.4. This argument fails, for the governing date of whether Boxx is entitled to disability retirement as a safety member is the date of injury, not separation from employment, and recognition of peace officer status is shown by Boxx being sworn in as a peace officer in May 1975, which was after his injury and during his activity as a radio operator.

[9]The court had evidence before it that a wholly separate "Animal Control and Parking Department" has been established from the police department. The court rejected this evidence, though, because no showing had been made that the evidence was improperly excluded or could not have been considered by the administrative board.

The key issue is whether respondent's duties were within the scope of active law enforcement under Government Code section 20020. In *Crumpler* v. *Board of Administration, supra*, 32 Cal.App.3d 567, the court stated with regard to defining the scope of active law enforcement: "The phrase 'active law enforcement service' appears in various sections of the Public Employees' Retirement Act. . . . In an opinion discussing the meaning of the term 'active law enforcement' for the purpose of determining eligibility as a 'safety member' under the County Employees' Retirement Law of 1937 (§§ 31469.3, 31470.3), the Attorney General observed: '. . . It is not possible to provide any more than a broad definition of what constitutes active law enforcement within the intendment of the County Employees' Retirement Law. We would say generally that it includes positions, the principal duties of which pertain to the active investigation and suppression of crime; the arrest and detention of criminals. . . .'" (*Id.* at p. 577, quoting from 22 Ops.Cal.Atty.Gen. at p. 229.)

The court found in *Crumpler* that the appellants' duties "involved the enforcement of state and local laws and ordinances pertaining to the licensing, control and maintenance of animals."[10] (*Id.* at p. 572.) And these duties were held to be outside of the scope of active law enforcement.

Applying these standards to the duties that respondent performed, we affirm the trial court's holding that his duties involved active law enforcement as this term is used in Government Code section 20020.

Respondent was uniformed, armed and designated as a peace officer. Respondent was also required to make arrests for criminal activity occurring in and around HACLA property. In May of 1975 he was sworn in as a "peace officer."

According to Housing Authority of the City of Los Angeles Manual of Policies and Operations for HACLA Patrol Officers, the primary duties of a patrolman are ". . . the preservation of peace within the housing developments, the protection of life and property therein against attacks by criminals or injury by the careless and inadvertent offender." The manual goes on to define probable cause for arrest and to cite numerous

---

[10]Appellants' use of *Crumpler* for the proposition that respondent herein was not involved in active law enforcement is clearly inappropriate, because he was involved in police-like work with people.

to cite numerous penal statutes which the patrolmen are responsible for enforcing.

The primary duty of respondent was the "active investigation and suppression of crime" and "the arrest and detention of criminals." (22 Ops.Cal.Atty.Gen., *supra*, at p. 229.)[11] Even appellant PERS refers to respondent's duties as "police-like."

Appellants contend that HACLA patrolmen merely exercised powers of law enforcement held by private individuals. We disagree.

*Dyas* v. *Superior Court, supra*, 11 Cal.3d 628, 633, held as a matter of law that a HACLA patrolman involved in a questionable search and seizure was not acting as a private citizen, or for a private purpose. HACLA exercised "public and essential governmental functions." (*Id.* at p. 634, citing Health & Saf. Code, § 34310.)[12] The issue presented there was whether a HACLA patrolman was acting as a peace officer or private citizen at a May 1, 1973, search challenged as violative of the Fourth Amendment of the United States Constitution and article I, section 19, of the California Constitution. (*Dyas* v. *Superior Court, supra*, at pp. 631-632.)

The court's discussion at pages 633-634 sheds light on the scope of HACLA patrolmen's duties. In that case there was testimony that HACLA patrolmen "'are uniformed officers and the vehicles are marked.... The uniforms are the color of the marshal's uniforms... with the standard basket weave and leather belts, badge and tie, and standard police dress.' He [the HACLA patrolman] was armed with a revolver, carried handcuffs, and had a two-way radio in his patrol car. Nor did he hesitate to use these indicia of authority in the manner in which they were intended. As we have seen he radioed for a 'back-up unit,' ordered defendant to stand spreadeagled against a wall, conducted a pat-down search of defendant's clothing, drew his gun when defendant resisted, arrested and handcuffed defendant on finding con-

[11]The duties of a housing patrolman include crime prevention work at housing developments, property and person protection generally within the developments and patrols on foot or vehicle.

[12]HACLA patrolmen are clearly government employees and agents of the state, because they are on the payroll of the City of Los Angeles, and bonded, funded and controlled by the United States Housing Authority. They were clearly not serving the interests of a private employer. (*Dyas, supra*, at p. 634.)

traband, and held him in custody in the patrol car until assistance arrived. Clearly these are the acts of a law enforcement officer." (*Dyas, supra.*) The court held that the HACLA patrolman had the duty ". . . to enforce penal statutes and regulations on or about housing authority property, . . ." (*Dyas, supra,* at p. 636.)

Respondent's law enforcement activities notwithstanding, appellant HACLA asserts that Penal Code section 830.4 establishes that respondent's classification cannot be altered, because that section's legislative intent clearly states that the classification of HACLA patrolmen under the section as "peace officers" should not affect their retirement status.[13] Additionally, HACLA argues that Penal Code section 832.4, subdivision (b), prohibits any reclassification of HACLA patrolmen for retirement purposes.[14]

As discussed herein, Government Code sections 20019 and 20020 are the controlling sections with regard to retirement classification as a "local policeman" and, hence, a "local safety member"—not these Penal Code sections. These Penal Code sections appear to provide only that the granting of "peace officer" status should not by itself entitle HACLA patrolmen to different retirement status in another system. The provisions set forth in footnotes 13 and 14 do not prevent a mistaken retirement classification that does not fit duties actually performed from being corrected under Government Code section 20180; in fact, correction is mandated.

Respondent's duties qualified him for "local safety member" classification and we consider next how his mistaken classification can be corrected.

### Government Code section 20180

■ Having determined that respondent was properly classifiable as a "local safety member," Government Code section 20180[15] clearly

---

[13]"It is the intent of the Legislature that the changes effected by this legislation shall serve only to define peace officers, and that there be no change in the status of individual peace officers or classes of peace officers for purposes of retirement, . . ." (Stats. 1974, ch. 1006, § 4, p. 2166.)

[14]Penal Code section 832.4, subdivision (b), reads as follows: "Housing authority patrol officers of the City of Los Angeles shall be and shall remain a part of the Los Angeles City Housing Authority Retirement System and shall not become a part of any other peace officer retirement system or plan."

[15]In relevant part, section 20180 provides that:"Whenever, during the employment of any employee by. . .any contracting agency, or during the membership of a member in

mandates a procedure whereby the HACLA-PERS contract must be amended to effectuate the purpose of HACLA to provide retirement benefits for respondent rather than providing respondent with no coverage at all under PERS. As we have stated, it was clearly the intention of HACLA to provide retirement coverage through PERS and both HACLA and PERS believed they had accomplished that intention. Boxx was considered a member in the retirement system and payments were made by him and for him in that respect. It likewise appeared clear that the purported exclusion of safety personnel really meant, if anything, that the parties thought they were excluding a class of employees which was nonexistent in HACLA.

Section 20180 requires a correction of an error where a required act was not performed because of inadvertence, oversight or mistake of fact on the retirement board's part, or the employer's part; section 20162 provides that the chief administrative officer shall furnish monthly reports to PERS; and, section 20160 requires a showing of any changes in the status of a member employee. The duty to correctly classify an employee then becomes the duty of PERS.

In *Crumpler* v. *Board of Administration, supra,* 32 Cal.App.3d 567, 578, the court said: "The Public Employees' Retirement Act vests 'the management and control' of the system in the board (§ 20103) and the board is empowered to 'determine who are employees and is the sole judge of the conditions under which persons may be admitted to and continue to receive benefits under [the] system.' (§ 20124.)"

---

this system..., the board finds that, *because of inadvertence, oversight, mistake of fact, mistake of law, or other cause,* any action required by this part [Tit. 2, div. 5, pt. 3, Govt. Code, commencing at § 20000] to be taken or performed by an employee, his public employer..., or this system was not taken or performed at the time it should have been taken or performed, *the board shall take or perform such action,...* If, in any such case, the board finds that (1) the facts and circumstances are such that by adjustments pursuant to Section 20165, payments into or from the retirement fund, and correction of the books, accounts, and records of this system, or any of them, the action can be taken or performed as of the date it should have been taken or performed, and the status, rights, and obligations of the employee or member, his public employer, and this system can be made the same that they would have been if the action had been taken or performed at the proper time, and (2) *that the purposes of this part will be effectuated if the action is taken or performed as of the date it should have been taken or performed, the board shall take or perform it* as of that time, or order it to be taken or performed as of that time, and shall cause the books, accounts, and records of this system to be corrected accordingly, so as to make the status, rights, and obligations of the employee or member, his public employer, and this system the same in every respect that they would be if the action had been duly taken or performed at the proper time." (Italics added.)

By contract, PERS had agreed to provide retirement benefits for respondent. It now claims that it did not provide such benefits although, as the trial court found, through inadvertence, mistake of fact, etc., respondent had been improperly classified for the duties he performed. Under the "miscellaneous member" classification which respondent was in, he failed to qualify for any benefits, thereby being effectively excluded from PERS at the time of termination.

While there was no obligation to enter into the contract with PERS, once HACLA did, and once it included Boxx as a member in PERS, it became part of respondent's employment contract. (*Crumpler* v. *Board of Administration, supra*, 32 Cal.App.3d 567, 585-586.) Inherent in this contract is the duty on HACLA's part and PERS' part to properly classify respondent. As in *Crumpler, supra*, (p. 582) HACLA was estopped from not correcting its contract with PERS, if a correction was necessary. Concomitantly with the estoppel applicable to HACLA, PERS likewise is estopped to deny coverage. As *Crumpler* states: "The relationship between the city and the board is such that estoppel of the city is binding on the board. An estoppel binds not only the immediate parties to the transaction but those in privity with them." (*Id.* at p. 582.)

Hence, under section 20180, the "action required" was to properly classify respondent so that the duties he performed would be covered under PERS to give him its maximum coverage. This accomplishes the purpose of contracting with PERS.

Appellant PERS contends that there is no statutory authority for imposing "local safety member" coverage without consent of the local agency under Government Code section 20461. This contention is without merit, as appellant's reliance on this section is misplaced. Section 20461 is not, by its terms, exclusive in its coverage, providing one method of correcting mistakes in a contract, amendment by suitable resolutions of the parties.[16]

---

[16]Section 20461 states in part as follows: "Errors in any contract may be corrected through amendments approved by the adoption of suitable resolutions by the contracting parties. Excluded employees may be included by groups through amendments approved in the manner prescribed for the approval of the contracts, except that if there were no members of an excluded group when the contract was entered into, an election among the employees is not required."

Section 20461 appears to be merely a codification of the well established rule in contracts, that two parties may modify an agreement entered into at a later date to correct errors. (*Texas Co.* v. *Todd* (1937) 19 Cal.App.2d 174, 185 [64 P.2d 1180].) Government Code section 20180 provides another method to correct respondent's erroneous classification.

In *Crumpler* v. *Board of Administration, supra*, 32 Cal.App.3d 567, employees classified as "local safety members" years later had their classification changed to "miscellaneous members" by administrative board decision. On a writ of mandate to compel reversal of this classification, the court held that the board was estopped from reclassifying the employees as of the date of their initial classification for the retirement system, but held that the board could reclassify prospectively, from the date of their decision. (*Id.* at p. 584.)

As to the ability to correct the erroneous classification, the court stated at page 586: "Petitioners have no vested right in an erroneous classification. Indeed, as we have noted, the act [Gov. Code, § 20180] expressly provides for correction of errors such as occurred in the instant case. The provisions of section 20180 being as much a part of the contract of employment as other provisions of the retirement act, exercise of the power conferred by the section involves no violation or impairment of petitioners' contractual or vested rights."

It was therefore the obligation and intent of HACLA to properly classify respondent, and, had it done so, he would have been covered by appropriate provisions of the Public Employees' Retirement System. Likewise, it is clear that PERS intended to provide coverage for all HACLA employees. It was only upon the erroneous premise that HACLA had no local safety personnel that respondent was erroneously classified. Prior to respondent's termination, however, *Dyas* v. *Superior Court, supra*, 11 Cal.3d 628, had determined that HACLA did in fact have safety personnel qualifying them as safety members within PERS.[17] The correction due to error should have been made then, and, had it been made, there would have been no issue in the present case.

While appellants have other contentions, they are without merit. Government Code sections 20165 and 20461 provide the vehicle to correct the errors of the accounting system of HACLA and PERS

---

[17]*Dyas* was decided June 6, 1974, and respondent's injury occurred on June 24, 1974.

regarding respondent. In compliance with these sections and Government Code section 20180, we hold that the HACLA-PERS contract can be corrected to accurately reflect respondent's classification as a "local safety member."

Respondent is entitled to be granted disability retirement as a "local safety member."

The trial court's judgment ordering the issuance of a writ of mandate is affirmed.

Kaus, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied January 26, 1981, and appellants' petitions for a hearing by the Supreme Court were denied March 11, 1981.