[No. B052075. Second Dist., Div. Five. July 12, 1991.]

ROBERT E. OVEREND, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES
RETIREMENT SYSTEM, Defendant and Respondent.

**COUNSEL**

Alfred Klein for Plaintiff and Appellant.

Richard H. Koppes and F. Javier Plasencia for Defendant and Respondent.

**OPINION**

**ASHBY, Acting P. J.**—Appellant Robert E. Overend was retired for disability as a "state miscellaneous" member of the Public Employees Retirement System (PERS). He subsequently sought reclassification as a "state safety" member. (Gov. Code, § 20013, subd. (b).) Respondent Board of Administration of PERS determined that appellant was properly classified as a miscellaneous member and not entitled to safety member status. The trial court upheld the board's decision by denying appellant's petition for a writ of mandate. (Code Civ. Proc., § 1094.5.)

We affirm. Appellant was not entitled to reclassification, because appellant was not employed in a job classification within any of the categories of state safety members set forth in the pertinent sections of the Government Code.

Appellant was employed as a "Tax Compliance Representative II" with the California Franchise Tax Board. The job description for the position of "Tax Compliance Representative" states in part, "Evaluate[s] evidence,

reports, records, and hearsay to determine the amount of liability; interrogates all available witnesses, including informants and law enforcement officials as well as tax debtors; gathers all other evidence of illegal income; prepares legal documents to seize personal property in possession of law enforcement agencies and other third parties; takes into custody large amounts of currency and other valuable property; arranges for appraisal and sale of seized property; appears in court as a subpoened [*sic* ] witness."

From mid-1978 to December 6, 1978 (the date of his injury) appellant was on temporary assignment with the special investigations unit of the criminal division of the Franchise Tax Board. On December 6, 1978, while in the course of his employment, appellant was attacked and savagely beaten by two unknown assailants; he sustained severe injuries which led to his total disability. Appellant was investigating a "refund mill operation," a criminal scheme involving obtaining tax refund checks in the name of unemployed persons receiving public assistance. Appellant went to the Nickerson Gardens Housing Project to interview a woman whose name appeared on a refund check. He obtained an affidavit from her in which she claimed to know nothing about the refund check and to be unable to identify photographs of several suspects. Two teenagers observed the interview and ran out the door of her apartment at the conclusion of the interview. When appellant walked out to his car two men grabbed him by the neck, threw him to the sidewalk and repeatedly bashed appellant's head on the concrete. They took his wallet and, separately, his state identification badge.

Appellant thereafter was retired for disability as a state miscellaneous member of PERS. He subsequently applied to be reclassified as a state safety member, which would provide higher benefits. PERS denied the application. Appellant filed an administrative appeal. An administrative law judge conducted an evidentiary hearing and concluded appellant should be reclassified because appellant's duties, including the investigation of refund mill operations run by hard core criminals, involved inherently dangerous investigatory work which led directly to the apprehension and punishment of criminals.

Upon review pursuant to Government Code section 11517, respondent Board of Administration did not accept the recommendation of the administrative law judge. The board acknowledged that appellant's duties included inherently dangerous investigatory work. The board held, however, that the board had no authority to reclassify appellant as a state safety member, because appellant's position was not included in any of the statutes defining state safety members.

■ Appellant does not contend that his position is described in any of the applicable statutes. He contends he should nevertheless be reclassified as a state safety member on the ground he was performing dangerous criminal investigatory work similar to the work of many employees who do qualify for state safety membership.

Like the board and the trial court, we find no legal merit to this argument. The classification of state employees as miscellaneous members or safety members of PERS is a function of the Legislature. (Gov. Code, § 20013.) The Legislature makes delicate judgments in the face of conflicting political demands as to the categories of employees who qualify for state safety membership. Appellant's position is not included. The board properly concluded it had no authority to reclassify appellant as a state safety member, despite the hardship of appellant's individual case.

### DISCUSSION

The Public Employees Retirement Law (Gov. Code, § 20000 et seq.) establishes different classifications of membership in PERS. At the time of appellant's injury, "state member" included (1) state miscellaneous members, (2) university members, (3) patrol members, (4) state safety members and (5) state industrial members. (Former Gov. Code § 20013, subd. (b); Stats. 1975, ch. 233, § 1, p. 619.) Former section 20014 defined "state miscellaneous member" to include all members employed by the state and university, *except* industrial, patrol, and state safety members. (Stats. 1972, ch. 1098, § 3, p. 2084.) Thus appellant was a state miscellaneous member unless he was a state safety member. (There is no contention appellant was an industrial or patrol member.)

Approximately the date of appellant's injury, state safety members were described in 11 statutory sections beginning with Government Code section 20017.5 and ending with section 20017.12. Appellant's position as a "Tax Compliance Representative" with the Franchise Tax Board did not fall within any of the descriptions.[1]

---

[1]The Government Code included the following as state safety members: Section 20017.5, certain persons in the warden service of the Department of Fish and Game; section 20017.6, certain members of the Department of Foresty; section 20017.75, peace officers in the Department of Justice and the California State Police Division; section 20017.76, certain peace officers employed by the San Francisco Port Authority prior to their transfer to the San Francisco Port Commission; section 20017.77, certain job titles in the Department of Corrections, the Department of the Youth Authority, the Board of Prison Terms, and the Youth Offender Board; section 20017.78, certain employees of state college police departments; section 20017.79, a long list of job titles in the Board of Prison Terms, Department of Corrections and Department of the Youth Authority; Section 20017.8, lifeguards; section 20017.9, certain firefighters; section 20017.93, certain park rangers in the Department of

Subsequent to appellant's injury the categories of state safety membership have increased. The statutory scheme was also revised in 1984 and a new category of "state peace officer/firefighter members" was added. (Gov. Code, § 20013, subd. (b)(6); Stats. 1984, ch. 280, § 1, p. 1471.) There is no contention, nor does it appear, that appellant's position has been included in any of the subsequent amendments.[2]

Appellant's contention that the Board had the power and duty to reclassify him as a safety member is based on language taken out of context from other cases. Those cases required a determination whether the particular employee was engaged in "active law enforcement" or "custodial duties" because the applicable *statute* defined the entitlement in those terms. (*Crumpler v. Board of Administration* (1973) 32 Cal.App.3d 567, 578 [108 Cal.Rptr. 293] [Gov. Code, § 20020, defining "local policeman" in terms referring to "active law enforcement service"]; *Boxx v. Board of Administration* (1980) 114 Cal.App.3d 79, 85 [170 Cal.Rptr. 538] [same]; *Ames v. Board of Retirement* (1983) 147 Cal.App.3d 906, 912 [195 Cal.Rptr. 453] [Gov. Code, § 31469.3, defining local safety member as a county employee "whose principal duties consist of active law enforcement"]; *Kimball v. County of Santa Clara* (1972) 24 Cal.App.3d 780, 785 [101 Cal.Rptr. 353] [Lab. Code, § 4850, excluding certain employees who do not "clearly come within the scope of active law enforcement service"]; *Noroian v. Department of Administration* (1970) 11

---

Parks and Recreation and firefighters in the Military Department; and section 20017.12, campus firefighters.

[2]The following categories have been included by the Government Code as state safety members: Section 20017.77, certain positions in the Department of Corrections, the Department of the Youth Authority, the Board of Prison Terms, the Youthful Offender Parole Board, and the Prison Industry Authority; section 20017.79, a long list of specific classifications in the Board of Prison Terms, Department of Corrections, Department of the Youth Authority and Prison Industry Authority; section 20017.81, certain employees of the State Department of Mental Health or of Patton State Hospital or Atascadero State Hospital; section 20017.82, certain employees of the State Department of Mental Health, the Department of Forestry and Fire Protection and Patton State Hospital and Atascadero State Hospitals; section 20017.85, a long list of specific class titles in various departments; section 20017.86, special investigators in certain departments (not including the Franchise Tax Board) and certain state park rangers designated as peace officers; section 20017.88, certain vocational instructors for correctional facilities; section 20017.91, campus firefighters; section 20017.93, certain park rangers and firefighters; section 20017.94, certain employees of the Department of Parks and Recreation.

The following sections of the Government Code specify who is included in the new category of state peace officer/firefighter members: section 20017.95, special investigators in various departments (not including the Franchise Tax Board), certain peace officers in the Department of Justice and park rangers in the Department of Parks and Recreation; section 20017.96, a list of certain job class titles; section 20017.97, various specific categories; section 20017.975, certain employees of California State University police departments; section 20017.98, members of specific named bargaining units; section 20017.985, California State University firefighters; section 20017.986, judicial bailiffs and security coordinators; section 20017.99, certain peace officers.

Cal.App.3d 651, 653 [89 Cal.Rptr. 889] [Gov. Code, § 21292.8, involving Department of Corrections personnel "having custodial duties"].)

Here appellant's job does not fall within any statutory definition of state safety member. There is no occasion to consider whether appellant could be described as engaged in active law enforcement, because appellant does not fall within any statutory category involving that test. Although pension legislation is liberally construed in favor of an applicant, the purpose of the rule of liberal construction is to effectuate legislative intent. Neither the board nor the court has authority to allow eligibility for persons obviously excluded from the legislative scheme. (*Neeley* v. *Board of Retirement* (1974) 36 Cal.App.3d 815, 822 [111 Cal.Rptr. 841].) The statutory authority for correcting mistakes cannot be used to grant appellant a status which is not available to him. (Gov. Code, § 20180, subd. (a)(3).)

The Legislature did not adopt a general definition of state safety membership. Instead it enacted numerous specific categories, each with its own criteria. Appellant simply does not fit into any of the statutory categories. Some of appellant's own witnesses at the administrative hearing recognized that expanding the job classifications within state safety membership involves lobbying the Legislature or collective bargaining. For example, as explained by these witnesses, the special investigators in the criminal division attempted unsuccessfully for several years to persuade the Franchise Tax Board to support obtaining peace officer status for them. Management did not agree, nor was a legislative lobbying effort successful.

Although the board must develop, and collective bargaining may influence, a list of all the classes of positions which meet the legislative criteria, such list must be consistent with the legislative criteria. (Gov. Code, § 18717.)[3] Appellant can point to no legislation which authorizes state safety membership for appellant's job position.

---

[3]Government Code section 18717 provides: "(a) The board shall develop objective criteria for determining the application of the state safety category of membership in the Public Employees' Retirement System to positions in the State Civil Service. Upon the request of the Department of Personnel Administration or an employee organization, the board shall then determine which classes of positions meet all or part of the elements of the criteria and shall list the positions in order based upon the degree in which their duties meet the criteria. An employee organization which requests a determination with respect to a class of position previously determined not to meet the criteria shall submit a written argument supporting the assertion that the class of position meets the criteria. The board, if it finds the written argument to be unpersuasive, may refuse to commence determination proceedings unless and until either the Department of Personnel Administration requests a determination with respect to that class of position or the employee organization submits to the board a supporting argument which the board finds persuasive. The board shall indicate to the department whether the classes qualify for state safety membership The Public Employees' Retirement

The judgment is affirmed.

Boren, J., and Grignon, J., concurred.

---

System and employing agencies shall assist and cooperate with the board in preparation of the report. [¶] (b) The board shall transmit the report directly to the department, which shall make a copy available to the exclusive representative of any employee organization upon its written request. [¶] (c) The department may use the results of the study in subsequent negotiations with the exclusive employee representatives; however, the report shall in no way obligate the department to take any action or make any recommendations as it relates to state safety membership. [¶] (d) The department shall not recommend safety membership for any class of employees who have not been determined by the board to meet the established criteria. [¶] (e) For classes of employees recommended for state safety membership by a memorandum of understanding reached pursuant to Section 3517.5, a copy of the report authorized under this section shall be submitted to the Legislature with the signed memorandum of understanding."