Filed 6/3/14  Gill v. West Contra Costa Unified School Dist. CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DORIS GILL,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT et al.,<br><br>        Defendants and Respondents. | A137888<br><br>(Contra Costa County<br>Super. Ct. No.  C12-01471) |

Appellant Doris Gill retired from her employment with the West Contra Costa Unified School District in 2007.  She receives retirement benefits, including a pension, through the California Public Employees' Retirement System (CalPERS) for service between 1987 and 2007.  Gill contends that she is entitled to additional benefits for employment with the school district between 1972 and 1987.  In 2012, she filed suit in the superior court against the West Contra Costa Unified School District, the West Contra Costa Unified School District Board of Education and Superintendent Bruce Harter (collectively the District), alleging that the District failed to accurately report Gill's employment history to CalPERS.  She sought a declaration of her rights and injunctive relief.  The trial court sustained the District's demurrer without leave to amend on the basis that the complaint failed to state a cause of action in that it was filed after expiration of the applicable statute of limitations.  Gill contends that the court erred as a matter of law, and that her claim for retirement benefits is not time barred under an exception

1

provided in Government Code section 20164. The principal question is whether the statutory exception applies to the District. The trial found that it did not. We affirm.

## I.  BACKGROUND

Gill retired from employment with the District on or about April 1, 2007. She filed her complaint for declaratory and injunctive relief on June 20, 2012. Gill states that, when she retired, the District advised CalPERS that she had been employed by the District only between 1987 and 2007. She alleges that she had been a full-time time employee of the District from September 1, 1972, and was entitled to have her retirement benefit calculated based on a service period commencing September 1, 1972 through April 1, 2007. Despite Gill's demand to correct the error, the District refused to acknowledge the earlier period of service, refused to produce records of her service, and denied her access to her employment records. Gill sought a declaration that she had commenced full-time work September 1, 1972, and that "she be credited for the service period from September, 1972 through September, 1987 in calculating her retirement benefit." She requested an order directing the District to "transmit to CalPERS the service period from September 1, 1972 through 1987 so that [Gill's] correct retirement benefit would be computed."

The District demurred, asserting that either the two-year limitations period applicable to oral contracts under Code of Civil Procedure section 339 or the four-year limitations period applicable to written contracts under Code of Civil Procedure section 337 barred the complaint. In opposition, Gill argued, inter alia, that the District had a continuing duty to her with respect to her retirement benefits under Government Code section 20164,[1] and that subdivision (b)(2) (hereafter section 20164(b)(2)) of that

---

[1] All statutory references are to the Government Code unless otherwise indicated. Section 20164, subdivision (a) provides: "The obligations of this system to its members continue throughout their respective memberships, and the obligations of this system to and in respect to retired members continue throughout the lives of the respective retired members, and thereafter until all obligations to their respective beneficiaries under optional settlements have been discharged. The obligations of the state and contracting agencies to this system in respect to members employed by them, respectively, continue

2

statute expressly provided that no limitations period applied to any case where the retirement system owes money to a member or beneficiary.

The trial court heard oral argument on the demurrer on October 24, 2012. In response to Gill's contention that section 20164(b)(2) governed, the court stated, "I just don't see that the statute of limitations waiver that's in the Government Code section applies to the school district[, it] applies to CalPERS." The trial court sustained the demurrer without leave to amend, finding that the complaint was time barred under either section 337 or 339 of the Code of Civil Procedure. Judgment was entered for the District on December 21, 2012. A timely notice of appeal was filed on February 13, 2013.

## II.    DISCUSSION

"On appeal from a dismissal following the sustaining of a demurrer, this court reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. [Citation.]" (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 122.) "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) " 'The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]' [Citation.]" (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1080.)

throughout the memberships of the respective members, and the obligations of the state and contracting agencies to this system in respect to retired members formerly employed by them, respectively, continue until all of the obligations of this system in respect to those retired members, respectively, have been discharged. The obligations of any member to this system continue throughout his or her membership, and thereafter until all of the obligations of this system to or in respect to him or her have been discharged."

3

A.	*Application of Section 20164(b)(2)*

The threshold question is whether section 20164(b)(2) has any application to Gill's claims. The interpretation of a statute is question of law, which this court examines independently. We are not bound by the trial court's construction. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 768.)

Section 20164(b)(2) is part of the Public Employees' Retirement Law (PERL) (§ 20000 et seq.), which establishes a retirement system for certain state and local government employees. Section 20164, subdivision (b) reads in full: "For the purposes of payments into or out of the retirement fund for adjustment of errors or omissions, whether pursuant to Section 20160, 20163, or 20532, or otherwise, the period of limitation of actions shall be three years, and shall be applied as follows: [¶] (1) In cases where this system makes an erroneous payment to a member or beneficiary, this system's right to collect shall expire three years from the date of payment. [¶] (2) In cases where this system owes money to a member or beneficiary, the period of limitations shall not apply."

Gill contends that the "system" owes her money for unpaid benefits and there is consequently no limitations period on her claim. She argues that the District is a "contracting agency" under section 20164, subdivision (a), and that for purposes of the statute, a "contracting agency" must be considered part of the overall "system."[2] Since the District has continuing obligations under section 20164, subdivision (a), she insists that section 20164(b)(2) should be read to apply to the District as well as to CalPERS. Thus, she insists, section 20164(b)(2) necessarily applies to a former employee's demand

---

[2] The District does not dispute that it is a contracting agency as defined in the PERL. " 'Contracting agency' means any public agency that has elected to have all or any part of its employees become members of this system and that has contracted with the board for that purpose. 'Contracting agency' also means any county office of education, school district, or community college district that has elected to have all or part of its employees participate in a risk pool and that has contracted with the board for that purpose." (§ 20022.)

4

that the District cooperate in the an attempt to ensure that CalPERS has received accurate and complete records from the District relating to the former employee's retirement benefits. But Gill also acknowledges, as she must, that the "system" as identified in section 20164(b)(2) refers to CalPERS, and not the District. (See § 20058, subd. (a) [" 'Retirement system' or 'this system' means the Public Employees' Retirement System"].) " 'If the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts.' [Citation.]" (*People v. Canty* (2004) 32 Cal.4th 1266, 1277.) The District contends that Gill also ignores the plain wording of section 20164, subdivision (a), which expressly provides that the statutory continuing obligations of a contracting agency are to *CalPERS* ("to this system"), rather than to the retired member.

Gill cites the rule that " 'pension laws are to be liberally construed to protect pensioners and their dependents from economic insecurity. [Citation.]' " (*County of Orange v. Association of Orange County Deputy Sheriffs* (2011) 192 Cal.App.4th 21, 41.) She is correct that laws pertaining to CalPERS are "to be interpreted in favor of the employee or beneficiary when a semantic ambiguity is presented by the statute at issue. [Citations.]" (*City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 39.)

Our primary objective in interpreting a statute is to determine and give effect to the underlying legislative intent. (Code Civ. Proc., § 1859.) Intent is determined foremost by the plain meaning of the statute's language. If the language is clear and unambiguous, there is no need for judicial construction. " ' " 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" ' [Citation.]" (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32.) "If the meaning of the statute remains unclear after examination of both the statute's plain language and its legislative history, then we proceed cautiously to . . . apply 'reason, practicality, and common sense to the language

5

at hand.'  [Citation.]"  (*Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 583.)

We agree that the plain wording, and the plain meaning, of the statute does not support Gill's suggested reading, and we find no "semantic ambiguity" requiring construction or interpretation.  "Where the meaning of a statute of limitation is clear, 'it is the function of this court to apply the statute as written.  [Citation.]'  [Citation.]" (*O'Neill v. Tichy* (1993) 19 Cal.App.4th 114, 120.)  By its terms, section 20164, subdivision (b) governs limitations periods for "adjustment of errors or omissions" in "payments into or out of the retirement fund."  It is applicable to claims by or against CalPERS (the "system") for overpayment or underpayment of benefits.  It requires CalPERS to seek to recovery of any overpayments within three years, and permits a retiree an unlimited time to make claims for money alleged to be owed by CalPERS.  But Gill does not seek adjustment by CalPERS of the "errors and adjustments" she alleges here,[3] and she is not seeking to recover from the District the money allegedly owed to her.  Her retirement benefits are paid by CalPERS, not by the District.  Her complaint did not seek to recover money owed from CalPERS, but instead sought a declaration of her entitlement to full-time service credit  from September 1, 1972 through September 1987 in calculating her retirement benefit.[4]  Gill's complaint does not plead a cause of action under the PERL,

_____

[3] Were she doing so, she would first be required to utilize and exhaust the administrative procedures for seeking correction of errors or omissions set forth in section 20160.  Where an administrative remedy is provided, relief must be sought first from the administrative body before recourse to the courts is permitted.  (*Unfair Fire Tax Com. v. City of Oakland* (2006) 136 Cal.App.4th 1424, 1428; see also *City of Pleasanton v. Board of Administration* (2012) 211 Cal.App.4th 522, 541–542 ["a party must present its factual and legal claims to [CalPERS] before it can obtain review of them in the courts"].)  So far as the record shows, Gill has not pursued those remedies.

[4] We question whether the court would have any authority to determine her entitlement to service credit in a lawsuit against the District.  The CalPERS Board is the sole judge in the first instance of the conditions under which persons may be admitted to and continue to receive benefits.  (§ 20125.)  Since the parties have not raised this issue, and since we decide that Gill's complaint is otherwise time barred, we need not reach this question.

but essentially alleges that that the District breached its contractual and/or fiduciary duties to her by failing to accurately report her term of employment. It necessarily did so prior to the date of her retirement in April 2007.

"Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute." (Code of Civ. Proc., § 312) In the trial court, as here, the District argues that Gill's complaint is barred either by the two-year limitations period applicable to oral contracts (*id*., § 339) or the four-year limitations period applicable to written contracts (*id*., § 337). In a similar context, at least one court has found that the three-year statute of limitations for "[a]n action for relief on the ground of fraud or mistake" (*id*., § 338, subd. (d)) applied to the claim of a county retirement association for employee contribution arrearages. (*County of Marin Assn. of Firefighters v. Marin County Employees Retirement Assn.* (1994) 30 Cal.App.4th 1638, 1651.) There is also a three-year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture" (Code of Civ. Proc., § 338, subd. (a)), and Code of Civil Procedure section 343 specifies generally a four-year limitation upon "[a]n action for relief not hereinbefore provided for." The limitations period applicable to ordinary actions at law and suits in equity apply equally to declaratory relief. (*Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 463.) We need not decide which statue would apply, because the latest period within which Gill was required to bring her action was four years. "[W]here the Legislature intends that another or no limitations period applies, it must say 'so in clear and unmistakable language. [Citation.]' [Citations.]" (*County of Marin Assn. of Firefighters v. Marin County Employees Retirement Assn.,* at p. 1651.)

B.      *Leave to Amend*

Gill insists that, even if a limitations period applied to her action against the District, it was an abuse of discretion for the court to deny her leave to amend. She says that she should have been given an opportunity to plead equitable estoppel and/or equitable tolling as a bar to the District's invocation of the statute of limitations.

Alternatively, she contends that she would be able to plead continuous accrual of her cause of action, thus defeating application of the statute.

It is an appellant's burden to show that the complaint might be amended to state a viable claim. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655; *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) "Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]" (*Rakestraw v. California Physicians' Service,* at p. 44.) Gill fails to meet that burden.

As to her equitable estoppel theory, Gill does not begin to suggest how she might plead such a claim against the District, only that it is "possible" that she could do so. She says only that she had "on-going discussions" with the District between her retirement in 2007 and the filing of her complaint, and that the District failed or refused to make a full search of its employment records for the disputed period. " 'The doctrine of equitable estoppel is founded on concepts of equity and fair dealing' " and " 'provides that a person may not deny the existence of a state of facts if [that person] intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment.' " (*Killian v. City and County of San Francisco* (1978) 77 Cal.App.3d 1, 13.) The elements of a claim of equitable estoppel are: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]" (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305–306; *City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 239; *City of Pleasanton v. Board of Administration, supra,* 211 Cal.App.4th at pp. 543–544.) " 'A public entity may be estopped from asserting the limitations of the tort claims statutes where its agents or employees *have prevented or deterred the filing of a timely claim by some affirmative act.*' " (*Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1064.)

8

Gill acknowledges that she knew of the service credit discrepancy when she retired in 2007. She alleges in her complaint that she made repeated demands on the District to provide correct information regarding her service credits and that in spite of her repeated requests to rectify the error, the District not only refused to produce the records she demanded but continued to maintain that her period of services was only from 1987 through 2007. She does not here point to any facts suggesting that the District misled her in any fashion, or that she delayed in filing her action in reliance upon anything that the District said or did—only that it failed or refused to give her the information she requested and denied that she was entitled to credit for additional service. Gill alleges no facts showing that the District prevented or deterred her from filing a claim. The cases cited by Gill provide no support for her position: *Elkins v. Derby* (1974) 12 Cal.3d 410, 417–419, allowed tolling of a tort claim against an employer pending completion of a workers' compensation claim; *Boxx v. Board of Administration* (1980) 114 Cal.App.3d 79, 90, involved correction of an erroneous employment classification in a contract between CalPERS and a public employer, and held only that the employer was estopped, under the circumstances, from not correcting the contract— no limitations period was at issue. While Gill says that "[i]t might well be possible" for her to effectively plead equitable tolling sufficient to come within a four-year statute of limitations period, she "offers no allegations" and provides "no legal authority" to support that possibility or to show the viability of such a claim. (*Rakestraw v. California Physicians' Service, supra,* 81 Cal.App.4th at p. 44.)

Gill fares no better with her theory of continuous accrual. She is correct that the statutory limitation upon the right to sue for a pension installment commences to run from the time when that installment falls due. (*California Teachers' Assn. v. Governing Board* (1985) 169 Cal.App.3d 35, 43.) But Gill is not suing the District for pension installments, whether within the statutory period or not. Nor could she, since the payments are made by CalPERS, and not the District. She insists that *California Teachers' Assn. v. Governing Board* is "substantially on point." That case did involve a suit by part-time teachers for both unpaid salary and for additional service credits. (*Id.* at

9

pp. 39–40.) While the teachers' claims for unpaid salary were time-barred, the court found that the claim for service credits was not. But Gill ignores the basis for that ruling—that the entitlement to service credits accrued "only upon retirement." (*Id*. at p. 44.) That is precisely Gill's problem here. Her cause of action against the District accrued at the time of her retirement in April 2007. "The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. [Citations.]" (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191; *id.* at pp. 1191–1192.)

The court did not abuse its discretion in denying Gill leave to amend.

C.     *Due Process*

Gill complains that enforcement of a limitations period on her claims deprives her, without due process of law, of a vested and constitutionally guaranteed property right in her retirement benefits. (See *County of Orange v. Association of Orange County Deputy Sheriffs, supra,* 192 Cal.App.4th at p. 41.) Not so. "[S]tatutes of limitations are not mere technical defenses, allowing wrongdoers to avoid accountability. [Citation.] Rather, they mark the point where, in the judgment of the Legislature, the equities tip in favor of the defendant (who may be innocent of wrongdoing) and against the plaintiff (who failed to take prompt action) . . . ." (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797.) Moreover, the PERL provides a specific mechanism for redress of the type of errors and omissions that Gill alleges here (§ 20160), and the District has a continuing obligation to provide CalPERS with the type of information that Gill seeks. "[T]he PERS Board's duty to correct the mistake (upon proof of the right to correction by the applicant) does not terminate until 'the expiration of obligations of this system to the party seeking correction of the error or omission,' which generally means throughout PERS membership and through the lifetime of retired PERS members (§§ 20160, subd. (c), 20164, subd. (a))." (*City of Oakland v. Public Employees' Retirement System, supra,* 95 Cal.App.4th at p. 50.)

### III.     DISPOSITION

The judgment is affirmed.

10

_____
Bruiniers, J.

We concur:


_____
Simons, Acting P. J.


_____
Needham, J.